F. R. BARNES v. C. R. VERRY.

C. R. VERRY v. GEORGE B. BARNES.

W. S. LAUDER AND ANOTHER, CLAIMANTS.

VIOLETTE M. VERRY, AS ADMINISTRATRIX v. JAMES
FITZGERALD, AS SHERIFF.[1]

January 12, 1923.

Nos. 23,161, 23,160, 23,162.

**Attorney's lien on client's judgment superior to claim of execution or attaching creditors.**

1. An attorney's lien on a judgment he has secured for his client is superior to the claim of a creditor of the client who levies on the judgment before the giving of notice of the claim for the lien. The rule holds good, although the lien was asserted by two attorneys, one of whom was not a resident of this state and not licensed to practice in its courts.

**Practice when judgment debtor buys judgment to set off against creditor's judgment.**

2. A judgment debtor may purchase a judgment to use as a set-off. If he wishes to avail himself of the right to have it treated as payment pro tanto, he should apply to the court to have one judgment set off against the other and not levy on the judgment against himself. The doctrine of set-off extends to judgments of different courts and to those rendered in separate jurisdictions.

**Debtor cannot attach judgment after levy under it and notice of sheriff's sale.**

3. When the sheriff has levied on the property of a judgment debtor and advertised it for sale, the debtor may not interrupt the execution of the process of the court by attaching the judgment.

**Assignment of judgment good between the parties, when not filed.**

4. As between the parties to a judgment, an assignment thereof is good, although not filed.

[1] Reported in 191 N. W. 589.

Failure to make pleading definite immaterial when the issue raised is not litigated.

    5. Failure to comply with an order to make a pleading more definite and certain is of no consequence if the issue tendered by the portion of the pleading covered by the order is not litigated.

Uncontradicted evidence does not compel a finding in accordance with it.

    6. Uncontradicted testimony does not compel a finding in accordance therewith.

Three actions in the district court for Wilkin county to recover $3,550. The facts are stated at the beginning of the opinion. The cases were tried together before Flaherty, J., who made findings as stated in the third, fourth and fifth paragraphs of the opinion. The motions of James Fitzgerald, George B. Barnes and F. R. Barnes for new trials were denied. From the judgment entered pursuant to the order for judgment, James Fitzgerald and F. R. Barnes appealed. Affirmed.

*George D. Smith* and *Wolfe & Schneller*, for appellants.

*Lewis E. Jones* and *W. S. Lauder*, for respondents.

LEES, C.

Three judgments of the district court of Wilkin county are involved in these appeals, which were heard and submitted at the same time.

On December 27, 1919, a judgment was entered in the district court of Wilkin county in favor of C. R. Verry and against George B. Barnes for $2,623.80. An execution was issued and a levy made on land in that county. The land was advertised for sale on February 21, 1920. On that day Barnes' attorney paid to the sheriff $2,718.65, the amount required to satisfy the execution. In 1917 a North Dakota bank obtained a judgment against Verry for $6,099.88. On February 18, 1920, $3,550 was due on the judgment. On that day the bank assigned the judgment to F. R. Barnes, who is a brother of George B. Barnes. F. R. Barnes immediately commenced an action against Verry in the district court of Wilkin county to

recover the amount due on the judgment and caused a writ of attachment to be issued and delivered to the sheriff, and on February 20 the sheriff levied on Verry's judgment against George B. Barnes and on the land about to be sold to satisfy it. On the following day the sheriff made return on the execution, certifying that he had collected $2,718.65 thereon, deducted his fees and expenses, and held the remainder of the money by virtue of the attachment levied on the judgment. ' On February 18, 1920, C. R. Verry assigned his judgment against George B. Barnes to T. R. Verry. The assignment was not filed in the office of the clerk of the district court until February 23, 1920. At the time of the assignment, Verry was actually indebted to the assignee in a sum exceeding $3,000. On February 20, 1920, Lewis E. Jones and W. S. Lauder, as attorneys for C. R. Verry, filed in the office of the clerk of the district court a claim for a lien of $1,010.65 upon their client's judgment against Barnes. On February 26, 1920, T. R. Verry made a demand on the sheriff for the money he had received on the execution against Barnes. The demand was refused on the ground that F. R. Barnes had attached the money. Thereupon T. R. Verry brought an action against the sheriff to recover the money. He died while the action was pending and Violette M. Verry, as administratrix of his estate, was substituted as plaintiff. Messrs. Jones and Lauder intervened in the action in which C. R. Verry had obtained judgment against Barnes, and claimed so much of the money in the sheriff's hands as was required to satisfy their lien. There was a trial by the court without a jury of the several issues thus arising.

In F. R. Barnes v. C. R. Verry, the court found that the North Dakota judgment has been assigned to plaintiff on February 18, and that on the same day Verry assigned his judgment against George B. Barnes to T. R. Verry; that, to induce F. R. Barnes to purchase the North Dakota judgment, George B. Barnes gave him his note for $1,250, which was the amount paid for the assignment of the judgment; that in truth George B. Barnes was the purchaser of the judgment and the assignment to his brother was a mere device to defeat the collection of the Minnesota judgment in the case of Verry v. Barnes; that the note had been paid before the trial and that

at the time of the trial George B. Barnes was the real owner of the North Dakota judgment.

In C. R. Verry v. George B. Barnes, the court found that the attorneys had a lien upon the judgment for the amount they claimed.

In Violette M. Verry v. James Fitzgerald, as sheriff, the court found that plaintiff was entitled to judgment for the money in the sheriff's hands remaining after the lien of the attorneys had been satisfied.

These appeals are from the several judgments entered on the findings and were taken after motions for new trials had been made and denied.

1. The court was clearly right in giving Verry's attorneys judgment for the amount of their lien. An attorney's lien on a judgment he has secured for his client is superior to the claim of an execution or attaching creditor of the client who levies on the judgment before notice of the claim for the lien has been given. It has long been settled that a party to a cause may not run away with the fruits of his attorney's industry and ability without satisfying the attorney's just demands. The attorney has a lien on the cause of action from the time of the service of the summons. It continues until it is satisfied or released. It is not necessary that notice of the lien be given to the opposite party or his attorneys. They are required to take notice of it. Henry v. Traynor, 42 Minn. 234, 44 N. W. 11; Lindholm v. Itasca Lumber Co. 64 Minn. 46, 65 N. W. 931; Desaman v. Butler Bros. 114 Minn. 362, 131 N. W. 463; Kubu v. Kabes, 142 Minn. 433, 172 N. W. 496.

It is sought to avoid the application of these principles on the ground that Judge Lauder is a nonresident attorney, not licensed to practice in this state. We deem that fact unimportant. A nonresident attorney may try or assist in the trial or conduct of an action or proceeding pending in a court of this state. Section 4947, G. S. 1913. By usage and comity, the privilege of practicing in all the courts of a state is extended to regularly licensed attorneys of sister states. 6 C. J. 573. But they have no authority to commence actions in the courts of this state, Francis v. Knerr, 149 Minn. 122, 182 N. W. 988, and hence the prevailing practice is to associate a

resident attorney as the attorney of record. When this is done, as it was here, there is no reason for denying a lien for the compensation the client should pay.

2. Did F. R. Barnes acquire rights by virtue of the attachment which were superior to those of the Verrys? The findings with respect to the relations between George B. and F. R. Barnes have a material bearing on this question. To all intents and purposes, the former was playing in a double role. He was a judgment debtor whose property had been levied on and was about to be sold, and, at the same time, a judgment creditor seeking to attach a judgment against himself. A judgment debtor may purchase a judgment for the purpose of using it as a set-off, Morton v. Urquhart, 79 Minn. 390, 82 N. W. 653, 15 R. C. L. p. 823, 23 Cyc. p. 1483, but is not entitled, as a matter of right, to off-set one judgment against another, it being discretionary with the court to grant or deny such relief. Lundberg v. Davidson, 68 Minn. 328, 71 N. W. 395, 72 N. W. 71; Martin Co. Nat. Bank v. Bird, 92 Minn. 110, 99 N. W. 780. The procedure here is novel, but, of course, that alone is not a reason for holding that it was not proper. In Lemane v. Lemane, 27 La. Ann. 694, the court said: "The law tolerates no such absurdity as a judgment creditor seizing a judgment against himself." In Irvine v. Myers, 6 Minn. 398 (562), this was said:

"It is unncessary to consider the question whether Irvine could levy upon a judgment against himself * * * as we think the judgments should always be offset against each other when they are final between the parties and their rights fixed under them." And in Martin Co. Nat. Bank v. Bird, supra:

"Such mutual judgments are set off against each other * * * to avoid the unnecessary expense of issuing and levying executions in favor of the respective parties * * * upon the equitable theory that one judgment is to be treated as a practical payment pro tanto of that of the reciprocal judgment creditor."

In these cases, the court was speaking of domestic judgments, but the doctrine of set-off extends to judgments of different courts and to those rendered in separate jurisdictions, 15 R. C. L. p. 822,

23 Cyc. 1481, as, for example, to a decree in admiralty in a Federal court and a judgment in a state court, Schautz v. Kearney, 47 N. J. Law, 56, and to a final judgment in another state and a domestic judgment, Phillips v. MacKay, 54 N. J. Law, 319, 23 Atl. 941. Under all the authorities, since George B. Barnes was the real owner of the North Dakota judgment, he could have obtained adequate relief by applying to the district court of Wilkin county to have one judgment set off against the other, and the rights of all the parties could have been worked out if such an application had been made.

There are valid reasons for holding that a judgment debtor may not attach the judgment after his property has been taken on execution and is about to be sold. It is an elementary rule of law that money received by a sheriff at an execution sale, or paid to him to satisfy the execution, is in custodia legis and beyond the reach of another writ. 23 C. J. p. 359. It would have been of no avail for Barnes to attach the money he paid to the sheriff. He attempted to reach it by attaching the judgment and the question is: Should he be allowed to do indirectly what he could not do directly?

The right to levy on a judgment is recognized by statute and in the decisions of this court. Sections 7909, 7930, G. S. 1913; Thompson v. Sutton, 23 Minn. 50; Henry v. Traynor, supra; Wheaton v. Spooner, 52 Minn. 417, 54 N. W. 372. But in none of the cases cited was the levy made after execution was issued and notice of sale given, and in all of them the levy was made to satisfy a demand against the judgment creditor, held by one not a party to the judgment. An execution is the judgment creditor's process. As a general rule, it is within his exclusive control, and the officer must obey all reasonable directions from him. The command of the writ is to levy on and sell the property of the judgment debtor and pay to the judgment creditor the proceeds or so much thereof as will satisfy the execution. Section 7928, G. S. 1913. The command of a writ of attachment is that the unexempt property of the defendant shall be attached and kept by the sheriff, section 7848, G. S. 1913, and the levy made in response thereto creates a specific lien on the property and takes it into the custody of the law. Atwater v. Manchester Sav. Bank, 45 Minn. 341-346, 48 N. W. 187, 12 L. R. A. 741.

In the instant case, the judgment creditor would naturally direct the sheriff to go on with the sale of the land. An attaching creditor who is also the judgment debtor would naturally oppose the sale. When money was paid to the sheriff to satisfy the execution, a further conflict would arise. If he obeyed the command of the execution, he would pay the money to the execution creditor. If he obeyed the writ of attachment, he would keep the money for the attaching creditor. The process of the law should be allowed to run its course, for, if this was not the rule, there would be no end to the confusion and delays which a judgment debtor might create. Kelso v. Youngren, 86 Minn. 177, 90 N. W. 316.

As between the parties to the judgment, the assignment from C. R. to F. R. Verry was good, although it was not filed. Carlson v. Smith, 127 Minn. 203, 149 N. W. 199; Swanson v. Realization & Deb. Corp. 70 Minn. 380, 73 N. W. 165. As against the judgment debtor, the assignee acquired all the rights of his assignor two days before the judgment was attached. The court correctly ruled that the administratrix of T. R. Verry's estate was entitled to the money remaining in the sheriff's hands after the attorney's lien had been paid and satisfied.

3. C. R. Verry's failure to comply with the order requiring him to make a portion of his answer more definite and certain was of no consequence, because the issues tendered by this portion of the answer were not litigated at the trial.

4. The testimony of F. R. Barnes, coupled with the circumstances about which there is no dispute, justifies the inference that he never was the real owner of the North Dakota judgment; that George B. Barnes was such owner and that he had his brother buy it so he might use it as a means of getting rid of the Minnesota judgment. The fact that Barnes' testimony was not contradicted did not compel a finding that in fact he purchased the North Dakota judgment for himself and not for his brother. Nelson v. Schmidt, 153 Minn. 474, 191 N. W. 281, and the cases there cited.

Many other questions are raised in the briefs. They have not been overlooked. We do not discuss them because the foregoing considerations dispose of each of the several appeals.

Each of the judgments is affirmed.