ANA MARÍA MARTINÓ DE NÚÑEZ, ETC., ET AL., Plaintiffs and Appellants, v. SANTISTEBAN CHAVARRI & Co., S. en C., Defendant and Appellee.

No. 7439. Argued February 15, 1938.—Decided June 7, 1938.

V. *Polanco de Jesús* for appellants. *Angel A. Vázquez* for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the court.

In an action brought by Ana María Martinó, widow of Núñez, for herself and on behalf of her minor daughters Ana Amalia, Esther, and Carmen Núñez, against the mercantile firm of Santisteban Chavarri & Co., *S. en C.*, the District Court of San Juan rendered judgment on June 9, 1936, holding as follows:

"(1) Sustaining the complaint in so far as it seeks to have declared the attachment in suit No. 15979, brought by Santisteban Chavarri & Co., *S. en C.*, as plaintiff, against V. Núñez & Co., *S. en C.*, defendant, and the judgment entered in that case and all the proceedings to its execution, as being null and void and contrary to law, inasmuch as this court never acquired jurisdiction of the subject matter; (2) adjudging the defendant to return to the plaintiffs all the attached property which had been sold by her and, in default thereof, to pay them the just and reasonable value of said property at the time that the same was attached; (3) dismissing the complaint in so far as it refers to the amounts owed to V. Núñez Martínez, inasmuch as the plaintiffs have not placed us in a position to determine their exact value; (4) dismissing the complaint in so far as it refers to the return of $560 on account of sums delivered and which are claimed in the complaint; (5) dismissing the cross-complaint, since the judgment being null and void, it is impossible to collect the balance of something which was nonexistent and void from the beginning; (6) sustaining the cross complaint in so far as it alleges that the predecessor of the plaintiffs was owing the sum of $4,371.71 to the defendants on December 31, 1931, and adjudging said plaintiffs, as heirs of their predecessor Vicente Núñez Martínez, to pay to the defendant the sum of $4,371.71, with interest thereon at the legal rate from January 1, 1932; and (7) imposing upon the defendant and cross-complainant any costs which might have been incurred by the plaintiff and cross-defendant."

On the day following the judgment, the defendant cross-complainant moved to secure that part of the judgment by which the plaintiffs had been directed to pay to it the sum of $4,371.71, with interest thereon at the legal rate from January 1, 1932, and the court so ordered. In pursuance

thereof, the marshal attached the following property according to his return:

"A.—All right, title, and interest which the defendants may have in the judgment rendered in their favor in the present case, including the property or merchandise which the defendant is obliged to return to them or its value.

"B.—All right, title, and interest which the plaintiffs may have in the amount of the costs which, after the approval of the corresponding memorandum, the defendant shall be bound to pay to the plaintiffs.

"This attachment was levied by personally notifying the clerk of the District Court of San Juan, Mr. Juan Figueroa, the defendant Santisteban Chavarri & Co., S. en C., through its managing partner Mr. Anselmo Soroeta, and the plaintiffs by means of their attorney, Francisco M. Susoni, Esq. These notices were served on June 10, 1936, in the city of San Juan. A copy of each of the notices is accompanied herewith."

At this stage and after the judgment had become final (firme), the defendant and cross-complainant, on September 14, 1936, asked the court to order the clerk to issue a writ directed to the marshal for the execution of the judgment. The writ was served by the marshal, according to his return, as follows:

"Pursuant to the present order of execution issued by this District Court of San Juan I proceeded to execute the same and did execute it in this city of San Juan on October 6, 1936, by selling at public auction all the right, title, and interest which the plaintiffs might have in the judgment rendered in this case on June 9, 1936, marked with letter 'A' in the notice of sale published, and all the right, title, and interest which the plaintiffs might have in the proceeds of the costs which the defendant has to pay in this case once the amount thereof has been approved by this court, and which was marked with letter 'B' in the edict, the auction having been awarded to the defendant Santisteban Chavarri & Co., S. en C., which offered the sum of $700 for the property marked with letter 'A' and the sum of $300 for the property marked with letter 'B', or a total of $1,000 for the entire property above mentioned, and as these two offers were not improved and a reasonable time having expired, the un-

dersigned marshal awarded the property marked with letters 'A' and 'B' for the sums of $700 and $300, respectively.''

The plaintiffs on July 13, 1936, filed a memorandum of costs amounting to $2,064.75.

Then it appears from the record that the court, on October 8, 1936, set the 16th of the same month to hear the parties on a motion of the defendant to dismiss the memorandum ''inasmuch as all right, title, and interest which the plaintiffs might have in said memorandum had been awarded to the defendant, or in other words because the rights of creditor and debtor had become merged in the defendant.'' According to a note of the clerk, the setting was notified to the parties on the same day, October 8, 1936.

Five days afterward, that is, on October 13, 1936, the plaintiffs moved for the issuance of execution of the judgment in so far as it ordered the defendant to return to them the property attached by it, or in default thereof to pay to them its value, and the defendant, on October 21, 1936, filed a motion in opposition thereto,

''Because the plaintiffs have no longer any kind of title or interest, inasmuch as it was sold to the defendant by the marshal of this court at public auction held on October 6, 1936, as it appears from the record of this case. Such a sale is still in force.''

After the hearing the court took all the questions raised under advisement and decided them on the following November 2, thus:

''1. To approve as it does hereby approve, the memorandum of costs for the sum of $511.75.

''2. To sustain, as it does hereby sustain, the motion of the cross-complainant and consequently to order, as it does hereby order, the dismissal of the memorandum of costs by reason of the merger of the rights of creditor and debtor in said party.

''3. To deny, as it does hereby deny, the motion of the plaintiffs for execution of the judgment in so far as it is favorable to them, inasmuch as the cross-complainant has acquired their right, title, and interest in said judgment.''

It is from that decision that the present appeal has been taken by the plaintiffs, who insist that the judgment of June 9, 1936, was indivisible and hence could not be separately executed, and that the attachment and sale made were null and void.

■ The district court, in reasoning its conclusions set forth in the decision appealed from, said:

"(1) The judgment contains separate, distinct, and independent pronouncements, on the one hand in favor of the plaintiffs and on the other in favor of the cross-complainant, and it is therefore divisible. The pronouncements which benefit the plaintiffs concern the return of certain property or its value once this has been ascertained, and the costs, and the pronouncement which benefits the defendant is to recover a liquidated amount plus interest. The obligations are not reciprocal in such a way as to make the return of the property to the plaintiffs and the payment of costs, a condition precedent to the payment by them to the defendant of the liquidated amount and interest. The judgment having become final (*firme*), either of the parties in so far as the judgment benefited said party could obtain a writ of execution for its enforcement. Section 239, Code of Civil Procedure (1933 ed.); *Cosme* v. *Márquez,* 49 P.R.R. 764.

"(2) From the returns of service made by the marshal it does not appear that said official physically obtained possession of the property of the plaintiffs which he sold to the defendant in execution of the judgment. The marshal, as security for the judgment, attached as belonging to the plaintiffs all the right, title and interest in the judgment in so far as favorable to the plaintiffs, including the merchandise which the defendant was bound to return or its value, and in the proceeds of the costs which the defendant must pay to the plaintiffs. The attachment was levied by notifying the plaintiffs through their attorney and by notifying the clerk of the court so that he should make the corresponding annotation in the registry. In execution of that part of the judgment which was favorable to the cross-complainant, the above property was sold for the sum of $700 and the right to costs for the sum of $300. Consequently, the rights of creditor and debtor have become merged in the person of the cross-complainant, inasmuch as she is the owner of the costs which might be awarded to the plaintiffs in this case.

"The things attached and sold, that is, all the right, title, and interest in the proceeds of the judgment and of the memorandum

of costs have the caracter of property. Although incorporeal and not subject to manual delivery, they constitute wealth or fortune. Sections 252, 258 and 259, Civil Code (1930 ed.). The law permits the attachment and execution of goods not susceptible of manual delivery in the same manner as any other property. Section 246, Code of Civil Procedure (1933 ed.).

"In the case of *Costa & Santini, Inc.,* v. *Reg. of Humacao,* 32 P.R.R. 694, the appellant attached all right and title which the defendant might have had in an attachment which he had levied in a separate suit upon the farm of another. The registrar refused to enter a notice of attachment, inasmuch as said attachment had not been levied on realty or real rights of the debtor. The decision of the registrar was affirmed, but the court nevertheless said:

" 'The fact averred by the appellant that in the previous action of Guzmán against Orellano final judgment was rendered in favor of the former gives no special value or force to the record requested, and the appellant's remedy was rather to attach the amount of the said judgment so that when thereby subrogated to the right of Guzmán the appellant could take the corresponding action to obtain its execution or satisfaction, the effectiveness of the judgment being secured by the attachment granted in the same suit.'

"In other words, it is recognized that a plaintiff has the right to attach the amount of a judgment which his defendant might have obtained against a third person and, once such right has been adjudicated, to be subrogated immediately in place of the defendant and to exercise all other rights of execution or enforcement of the judgment. Of course, the attachment of the proceeds of a judgment should be for a liquidated sum or upon specific property.

"In Puerto Rico the proceeds of an insurance policy which is subject to liquidation and constitutes an incorporeal right not susceptible of manual delivery, may be attached, and the interest which a partner may have in a partnership, which is another incorporeal right not susceptible of manual delivery, may also be attached. *Quintana Bros. & Co.* v. *S. Ramírez & Co.,* 22 P.R.R. 707.

"In the case of *Giménez* v. *Brenes,* 10 .P.R.R. 124, it is said:

" 'All goods, chattels, moneys, and other property, both real and personal, or any interest therein, of the judgment debtor, not exempt by law, and all property and right to property seized and held under attachment in the action are liable to execution.'

" 'Section 246 of the Code of Civil Procedure makes all property of a debtor subject to execution.' *Blanco* v. *Municipal Court,* 41 P.R.R. 533, 535.

"In the case of *Pontón* v. *Succrs. of Huertas González*, 44 P.R.R. 607, although it is true that in the syllabus * it is stated that a judgment can not be sold at public auction, because it merely constitutes the evidence of a debt and is not subject to personal attachment, such a statement is a mere *dictum*, for in that case the question decided was with regard to a motion to substitute parties before the Supreme Court, without any steps therefor having been taken in the district court, yet as to the question of whether or not a judgment could be attached in Puerto Rico, the court said at page 609:

" 'We shall not attempt to decide the question between the parties in this Court because it is an important one and should not be passed upon by us, unless the matter has been fully discussed in the court below.' "

We are inclined to believe that the judgment was divisible. The case of *Cosme* v. *Márquez*, 49 P.R.R. 763 cited by the district court is a sufficient authority to support that conclusion.

█ Now, taking that as a basis, could the marshal in this particular case attach the judgment in so far as its pronouncements were favorable to the plaintiffs and subsequently award that interest to the defendant?

On July 31, 1936, that is, before the sale of that portion of the judgment, and consequently also before the rendition by the District Court of San Juan of the decision appealed from, this Supreme Court in the case of *Clausells* v. *Salas*, 50 P.R.R. 530, had declared:

"In so far as the second question is concerned, it would be sufficient to say that in our opinion the court did not commit the errors assigned to it by the appellant in reaching its decision.

"In setting forth the grounds for its decision, the district court correctly expressed itself as followed:

" 'As to the attachment of any sum of money which the plaintiff should pay to the defendants as excess over the liquidation of the contracts decreed to be specifically performed herein, defendants maintain that such attachment is void, for the reason that it is the same as though the plaintiff had attached in his own hands a sum

* NOTE.—This refers to the Spanish edition of the reports. See 44 *Decisiones de Puerto Rico*, p. 629. The syllabus in the English edition is differently worded.

which by the judgment belongs to the defendants, and maintain moreover that the defendants' right recognized by the judgment is not subject to attachment.

" 'As to these questions, the writ of the marshal, above, shows clearly that what was sought to be attached was:

" ' ' "Any sum of money which the plaintiff Pedro Clausells Armstrong should pay to the defendants above named as in excess of the liquidation of the two contracts of which specific performance was ordered by the judgment of the district court in the above entitled cause."

" 'From the same document it appears that the only persons notified of the attachment were the defendants and the persons in whose hands an attachment was sought to be levied upon the rents. There was no "levy" by the marshal upon any sum of money nor was there an attachment of any title to or interest in the credit which the defendants might have obtained by judgment in this case, nor was any sort of notice given to the plaintiff of the attachment of such credit.

" 'Our Supreme Court in the case of *Villar & Co.* v. *Hanson,* 40 P.R.R. 303, cites with approval the decision in the case of *Bissener* v. *Billón,* 71 Cal. App. 779, to the effect that "the attachment of property in the possession of plaintiff cannot be levied."

" 'In accordance with the provisions of Section 10 of the Act to secure the effectiveness of judgments of 1902, the rule is established that the attachment of movables or a prohibition to alienate the same shall be practiced by depositing properties in the possession of the court or of a person designated under the responsibility of the plaintiff. It is true that, in accordance with Section 246 of the Code of Civil Procedure, the debts or credits of a defendant may be attached upon execution proceedings, but it is further provided that it shall be "in like manner as upon writs of execution." For the application of a similar provision in the California Code, see the case of *McBride* v. *Fallon,* 65 Cal. 301. Furthermore, in *Needham* v. *Cooney,* (Tex.) 173 S. W. 979, it was decided that:

" ' ' "A judgment in favor of attachment debtor is not subject to levy." ' ' "

In the case of *Pontón* v. *Succrs. of Huertas González,* 44 P.R.R. 607, the court had said:

"Flores Alvarez & Co. does not seriously question the jurisprudence of California to the effect that a judgment can not be sold

at public auction but the method is to garnish the debtors obliged by such a judgment. The idea is that the judgment is only an evidence of a debt and not subject to personal attachment.''

If the holding of those cases is to prevail, the question we have asked above must be answered in the negative.

As we had some doubt regarding the scope of our former decisions, when the question was again submitted to us, we studied it still more carefully, and we have found many conflicting opinions with regard to the same. In volume 31 of American Law Reports, at page 711, there is a note to the case of *Verry* v. *Barnes,* 154 Minn. 252, 191 N.W. 589, from which we copy the following:

''Whether the same person may be both plaintiff and garnishee is a question upon which the authorities are conflicting. One line of authorities sustains, while the other denies, the right of a plaintiff to summon or charge himself as garnishee. The jurisdictions on the respective sides are almost exactly .equal, with a slightly larger number of cases favoring the right. Under these circumstances it can scarcely be said that the weight of authority favors either view. While the reported case (*Verry* v. *Barnes,* ante, 707), in holding that the judgment debtor could not attach his own judgment,—at least, after the property had been levied on and advertised for sale,—does not directly discuss the question, as such whether a plaintiff has a right in any event to summon or charge himself as garnishee, yet the decision seems in line with those authorities which deny the right, and appears to be opposed to a number of cases which have applied the doctrine that a plaintiff may make himself a garnishee, in holding that a judgment debtor might attach the judgment. Before this decision in the *Barnes Case,* it would seem that the weight of authority favored the right of a plaintiff to summon or charge himself as garnishee. That decision renders somewhat more doubtful the correct rule on the question, but the authorities seem still to preponderate slightly in favor of this right.

''Most of the cases involve debts owing by, or judgments obtained against, the plaintiff in garnishment. Several cases, however, present the question of the right of the plaintiff to attach property in his

own possession which belongs to his debtor. The right of the plaintiff to attach such property seems clearer than his right to garnish a debt owing from himself to the defendant, but the decisions in general do not apparently make a distinction in this regard. In *Beach* v. *Fairbanks* (1884) 52 Conn. 167, the court said that it seemed to be agreed that goods in the hands of a party belonging to his debtor may be attached by a garnishee process instituted by himself, but that it was not agreed that a debt owed by a party may be attached by that proceeding in a suit brought by the debtor upon a claim which he might have against his creditor. The statements are, however, dicta, the decision resting on other grounds.

"To some extent the cases are affected by the particular terms of the local statutes, though many are decided on general grounds, and frequently follow precedents without assignment of the reasons for the decision."

We have consulted Corpus Juris and Ruling Case Law. Both of these works summarize the various opinions maintained. For example, in 28 Corpus Juris 50, it is said:

"Under the foreign attachment custom of London, from which the remedy of garnishment was derived, plaintiff could summon himself as a garnishee, and this practice has been allowed to a considerable extent under the garnishment statutes. But the better considered cases and, seemingly, the weight of authority, is to the contrary. This conflict seems to be irreconcilable. The terms of the statutes vary, of course; but the decisions pro and con are usually based upon general considerations. The rule against allowing plaintiff to make himself garnishee is based upon the lack of necessity for resort to garnishment and the inaptitude of the remedy in such cases, and upon the adversary character of the proceeding against the garnishee. And accordingly it has been held that plaintiff and garnishee respectively are in different capacities. A distinction is sometimes made in this connection between garnishment of tangible property in plaintiff's hands and garnishment of a debt owed by him to defendant."

And in note 84, at page 50 of Volume 28 of Corpus Juris, a case is cited, the reasoning of which, if considered in relation with the facts of the case at bar, also have a tendency

to justify a negative answer to the question formulated. The note says:

"*Rice* v. *Sharpleigh Hardware Co.*, 85 Fed. 559, 564 (construing Tennessee statute).

" 'On principle, it will readily occur to almost any one that to allow a plaintiff in attachment to garnish himself as a debtor to his creditor whom he made a defendant for that purpose, is a distortion of the process of garnishment from its ordinary uses, and in itself suggests that some ulterior or sinister purpose is to be accomplished. If two parties owe each other, the two debts, so far as they go, set themselves off, and from time immemorial the courts of the law have afforded them an ample opportunity to set them off against each other whenever either brings an action at law. And whatever defects formerly existed in courts of law have long since been supplemented by remedies in equity, so that it is never necessary that either should attach the other by garnishment for the simple purpose of setting one debt off against the other.' "

However, in 13 Am. Dec. 384, there is reported a case from Louisiana, that of *Grayson* v. *Veeche*, 12 Martin 688, which decides the question in the contrary sense to that already decided by us, treating it in such a simple, clear, and convincing way that it seems to us to express the law as it is and as it should be followed in this jurisdiction. The full text of the brief opinion of the court is as follows:

"This is a suit by attachment, in which the plaintiff caused the amount of a judgment lately recovered against himself by the present defendant to be attached. The latter obtained a dissolution of the attachment, the district court being of opinion 'that no attachment can be sued out by a person, indebted to another, for an alleged debt due him, attaching a debt due by himself, in his own hands, and making himself a garnishee.' The plaintiff appealed. According to our act of assembly, effects or credits (*effects ou creances*) of absent debtors may be attached: 1 Mart. Dig. 520, n. 6. Hence, if a debt due by such a debtor may not be attached by the person who owes it, it must be because he comes under some exception to the general rule. The district judge has not cited, nor does the appellee's counsel refer us to any.

"In *Graighle* v. *Notnagel et al.*, 1 Pet. 245, Washington, J., who delivered the opinion of the court, said that a defendant may attach the money due by him to the plaintiff, in his own hands, and plead the pendency of the attachment to the action against him. Sergeant, in his Law of Attachment, 72, shows that in England a party may attach money which he himself owes. So if A. recover a debt against B., the latter may attach in his own hands, for so much as is due him by A.: Rolle's Abr. 554. Our act of assembly authorizes universally the attachment of a debtor's credits, and the case cited from Peters shows that this, in Pennsylvania, may be done, even after suit was brought to recover the money afterwards attached; that from Rolle shows that the English courts hold that even a recovery does not prevent the attachment. Judge Washington examines the question on general principles; he does not rely on any particular provision in Pennyslvania, but shows that there is not the least impropriety or incongruity in a man attaching a debt which he himself owes. His reasoning appears to us conclusive.

"We do not see that any distinction may be made under the general words of our act of assembly. It authorizes the attachment of the debtor's credits, without distinguishing those which are in the hands of a person who has a claim against himself, on which an attachment may issue. *Ubi lex non distinguit nec non distinguere debemus.* We think the district judge erred.

"It is, therefore, ordered, adjudged and decreed, that the judgment of the district court be annulled, avoided and reversed, and the cause remanded, with directions to the judge to proceed in the case as if the attachment had not been dissolved; the costs of this appeal to be borne by the defendant and appellee."

We are inclined even further to agree with the Supreme Court of Louisiana, in view of the provisions of our Civil Code and of our Code of Civil Procedure to which reference is made by the trial court in the decision appealed from, and in view also of the fact that a study of the decisions cited by the district court in the paragraph of its opinion which we transcribed with approval in the *Clausells,* case, *supra,* shows that they do not have the scope which was attributed to them.

That being so, the question formulated must be and is answered in the affirmative, and consequently the decision appealed from will be affirmed.