ANA MARÍA MARTINÓ VDA. DE NÚÑEZ, por sí y en representación de sus menores hijas legítimas ANA AMALIA, ESTHER y CARMEN NÚÑEZ, demandantes y apelantes, *v.* SANTISTEBAN CHAVARRI & Co., S. EN C., demandada y apelada.

Núm. 7439.—*Sometido:* Febrero 15, 1938. *Resuelto:* Junio 7, 1938.

*V. Polanco de Jesús,* abogado de las apelantes; *Ángel A. Vázquez,* abogado de la apelada.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

En un pleito seguido por Ana María Martinó Viuda de Núñez por sí y en representación de sus menores hijas Ana Amalia, Esther y Carmen Núñez, contra la mercantil Santisteban Chavarry & Co., S. en C., se dictó por la Corte de Distrito de San Juan el 9 de junio de 1936 una sentencia que contiene los siguientes pronunciamientos:

"(1) declarando con lugar la demanda en cuanto a que el embargo en el pleito 15,979 seguido por Santisteban Chavarry & Co., S. en C., como demandante, v. V. Núñez & Co., S. en C., como demandada, y la sentencia dictada en este caso y todos los procedimientos posteriores a su ejecución, son nulos, ineficaces y contrarios a derecho, por no haber adquirido nunca jurisdicción este Tribunal en dicho asunto; (2) condenando a la demandada a devolver a las demandantes todos los bienes embargados y vendidos por ella, o en su defecto a pagarles el valor justo y razonable que dichos bienes tenían en el momento que fueron embargados; (3) declarando sin lugar la demanda en cuanto a las cantidades por concepto de deudas a favor de V. Núñez Martínez, ya que las demandantes no nos han puesto en condiciones de poder determinar su valor exacto y verdadero; (4) declarando sin lugar la demanda en cuanto a devolver la cantidad de $560.00 por concepto de sumas entregadas y que se reclaman en la demanda; (5) declarando sin lugar la reconvención, por cuanto siendo nula la sentencia, no puede cobrarse el saldo de una cosa inicialmente inexistente y nula; (6) declarando con lugar la contrademanda en cuanto a que el causante de las demandantes adeudaba a la demandada en 31 de diciembre de 1931, la suma de $4,371.71, y condenando a dichas demandantes, como herederas del causante Vicente Núñez Martínez, a pagar a la demandada la ameritada cantidad de $4,371.71, con más sus intereses legales desde enero 1 de 1932; y (7) imponiendo a la parte demandada y contrademandante las costas en que haya incurrido la demandante y contrademandada."

Al día siguiente de dictada, pidió la parte demandada y contrademandante el aseguramiento de aquella parte de la sentencia por virtud de la cual las demandantes habían sido condenadas a pagarle $4,371.71, con intereses legales a partir de enero 1, 1932, y la corte lo decretó, embargando a tal efecto el márshal, según su certificado de diligenciamiento:

"A.—Todo el derecho, título e interés que los demandados tengan en la sentencia dictada a su favor en el presente caso, comprendiendo los bienes o mercadería que tiene que devolverles la demandada o el valor de los mismos.

"B.—Todo el derecho, título e interés que las demandantes tengan en el importe de las costas que, después que se apruebe el correspondiente memorándum, deba pagar la demandada a las demandantes.

"Este embargo se practicó notificando personalmente el Secretario de la Corte de Distrito de San Juan, Sr. Juan Figueroa, a la demandada Santisteban Chavarry & Co., S. en C., por conducto de su socio gestor Sr. Anselmo Soroeta, y a las demandantes por medio de su abogado Sr. Francisco M. Susoni. Estas notificaciones se hicieron con fecha 10 de junio de 1936 en la ciudad de San Juan. Se une copia de cada una de las notificaciones hechas."

Así las cosas y firme la sentencia, la parte demandada y contrademandante pidió a la corte, el 14 de septiembre de 1936, que ordenara al Secretario que librara mandamiento al márshal para la ejecución de la misma. Librado el mandamiento, fué cumplimentado por el márshal, de acuerdo con su certificado, como sigue:

"Que en cumplimiento de la presente orden de ejecución librada por esta Hon. Corte de Distrito de San Juan, procedí a cumplimentar la misma y la cumplimenté en esta Ciudad de San Juan el día seis de octubre de 1936, vendiendo en subasta pública todos los derechos, título e interés que los demandantes tengan a su favor sobre la sentencia dictada en el presente caso el día 9 de junio de 1936, marcados en el edicto subasta con la letra 'A' y todo el derecho, título e interés que los demandantes tengan a su favor en el importe de las costas que en este caso deba pagar la demandada a las demandantes, después de aprobada su cuantía por la Hon. Corte, marcado en el edicto bajo la letra 'B', habiéndole otorgado la buena

pro a la demandada Santisteban Chavarry & Co., S. en C., quien ofreció por los bienes marcados letra 'A' la suma de Setecientos *dollars* ($700) y por los bienes marcados letra 'B' la suma de Trescientos *dollars* ($300) o sea un total de un mil *dollars* por los mencionados bienes y no habiendo sido mejorada ninguna de estas dos ofertas, y transcurrido tiempo razonable, el Márshal suscribiente adjudicó a la demandada los mencionados bienes marcados letra 'A' y 'B', por las respectivas cantidades de setecientos y trescientos *dollars*.''

Las demandantes, el 13 de julio de 1936, radicaron su memorándum de costas ascendente a $2,064.75.

Luego aparece de los autos que la corte el ocho de octubre de 1936 señaló el diez y seis del propio mes para oír a las partes sobre una moción de la demandada solicitando el archivo y sobreseimiento del memorándum ''por haberle sido adjudicado todo el derecho, título e interés de las demandantes en dicho memorándum, o sea por haberse confundido en la demandada los derechos de acreedor y deudor.'' Según nota del secretario, el señalamiento fué notificado a las partes el mismo día ocho de octubre de 1936.

Cinco días después, o sea el trece de octubre de 1936, las demandantes pidieron a la corte que ordenara la ejecución de la sentencia en cuanto condenaba a la demandada a devolverles los bienes que les embargara o en su defecto a pagarles el importe de los mismos, y la demandada, el veintiuno de octubre de 1936, radicó una moción oponiéndose,

''Porque las demandantes no tienen ya ninguna clase de título e interés (que) le fué vendido a la demandada por el Márshal de esta Hon. Corte, en venta pública celebrada el 6 de octubre de 1936, según consta en el récord de este asunto. Tal venta está subsistente.''

Celebrada la vista, la corte tomó bajo su consideración todas las cuestiones suscitadas y las resolvió en dos de noviembre siguiente, como sigue:

''1. Aprobar, como aprueba el memorándum de costas, por la suma de $511.75.

"2. Declarar como declara con lugar la moción de la contrademandante y, en su consecuencia, ordenar como ordena el sobreseimiento y archivo del memorándum de costas, por haberse confundido en dicha parte los conceptos de acreedora y deudora.

"3. Declarar como declara sin lugar la moción de las demandantes sobre ejecución de la sentencia en lo que les favorece, por haber adquirido la contrademandante sus derechos, títulos e intereses sobre dicha sentencia."

Y fué contra esa resolución que se interpuso por las demandantes el presente recurso de apelación, insistiendo en que la sentencia de nueve de junio de 1936 no era divisible y por tanto no podía ejecutarse separadamente y en que eran nulos el embargo que se trabó y la venta que se hizo de aquella parte de la misma que era favorable a las demandantes.

En el curso de la resolución apelada, razonando sus conclusiones, la corte de distrito se expresó así:

"(1) La sentencia contiene pronunciamientos separados, distintos e independientes, de una parte a favor de las demandantes y de la otra a favor de la contrademandante y es, por tanto, divisible. Los pronunciamientos que favorecen a las demandantes son para obtener la devolución de ciertos bienes o su valor después de haber sido éste determinado y las costas, y el pronunciamiento que favorece a la demandada es para que recobre una cantidad líquida e intereses. Las obligaciones no son recíprocas en tal forma que haga la devolución de bienes a las demandantes y el pago de las costas, una condición precedente al pago por ellas a la demandada de la cantidad líquida e intereses. Firme la sentencia, a petición de cualquiera de las partes en lo que le beneficia o favorece, podía obtener una orden de ejecución para su cumplimiento. Art. 239, Código de Enjuiciamiento Civil (ed. de 1933); *Cosme* v. *Márquez*, 49 D.P.R. 783.

"(2) De los certificados de diligenciamiento del márshal no aparece que dicho funcionario ocupara materialmente los bienes de las demandantes que vendió a la demandada en ejecución de la sentencia. El márshal embargó como bienes de las demandantes en aseguramiento de la sentencia todo el derecho, título e interés en la sentencia en lo favorable a las demandantes, comprendiendo las mercaderías que debía devolver la demandada o su valor, y en el importe de las costas que debía pagar la demandada a las demandantes.

El embargo se practicó notificando a las demandantes, por medio de su abogado, para su conocimiento, y también al Secretario de la Corte, para que hiciera la correspondiente anotación en el registro. Y en ejecución de la sentencia en lo favorable a la contrademandante le fueron vendidos dichos bienes por la suma de $700 los primeros. y por la cantidad de $300 el derecho sobre las costas. De suerte que en la contrademandante han quedado confundidos los conceptos de acreedora y deudora, siendo dueña de las costas que hubieran podido concederse a las demandantes en este caso.

"Las cosas embargadas y vendidas, o sea el derecho, título e interés en el montante de la sentencia y del memorándum de costas, tienen el concepto de bienes. Aunque cosas incorporales, no susceptibles de entrega manual, constituyen riqueza o fortuna. Arts. 252, 258 y 259, Código Civil (ed. de 1930). Y la ley permite el embargo y ejecución de bienes no susceptibles de entrega manual, de igual modo que cualquiera otra propiedad. Art. 246, Código de Enjuiciamiento Civil (ed. de 1933).

"En el caso de *Costa y Santini Inc.* v. *El Registrador,* 32 D.P.R. 755, la recurrente embargó todo derecho y acción que el demandado pudiera tener en un embargo que a su vez dicho demandado había trabado en pleito separado sobre una finca de un tercero. El Registrador denegó la anotación del embargo, por no haber recaído sobre bienes raíces o inmuebles o derechos reales del deudor. Se confirmó la nota; pero, no obstante, la corte, dijo:

" 'La circunstancia que sin embargo alega la recurrente de que en el anterior pleito de *Guzmán* v. *Orellano* se dictó sentencia a favor del primero, teniendo ésta el carácter de firme, no le da ninguna fuerza ni valor a la anotación solicitada, y más bien estaba al alcance de la recurrente su derecho a embargar el montante de dicha sentencia, quien subrogándose en el lugar de Guzmán podía ejecutar, una vez hecha su adjudicación, los demás trámites correspondientes hasta obtener su ejecución o pago, quedando asegurada su efectividad con el embargo que se había decretado en el mismo pleito.'

"En otras palabras: se reconoce el derecho de una demandante a embargar el montante de una sentencia que su demandado hubiera obtenido contra un tercero, y una vez adjudicado, subrogarse en lugar del demandado y ejercitar los demás trámites de ejecución o pago de la sentencia. Desde luego que el embargo sobre el montante de una sentencia debe ser por cantidad líquida o sobre propiedad determinada.

"En Puerto Rico el importe de una póliza de seguro, que está sujeta a liquidación y que constituye un bien incorporal, no suscep-

tible de entrega manual, puede embargarse y también puede embargarse el interés que un socio tenga en la sociedad, que es otro bien incorporal no susceptible de entrega manual. *Quintana Hnos.* v. *S. Ramírez & Co.*, 22 D.P.R. 761.

"En el caso de *Giménez* v. *Brenes,* 10 D.P.R. 128, 133, se dice:

" 'Todas las cosas y semovientes, dinero y demás bienes, así muebles como inmuebles, o cualquier interés en ellos pertenecientes al deudor declarado tal por la sentencia, no exentos por la ley, y toda propiedad y derecho respecto de ella, ocupado o embargado en el pleito, están sujetos a la orden de ejecución.'

" 'El artículo 246 del Código de Enjuiciamiento Civil hace que todos los bienes pertenecientes a un deudor estén sujetos a ejecución.' *Blanco* v. *Carballeira, Juez,* 41 D.P.R. 533, 535.

"En el caso de *Pontón* v. *Sucesores de Huertas y González,* 44 D.P.R. 629, si bien en el sumario se establece que una sentencia no puede ser vendida en pública subasta, porque sólo constituye la evidencia de una deuda y no está sujeta a un embargo personal, tal expresión es un *dictum,* pues allí se trataba de una moción para sustituir partes litigantes ante el Tribunal Supremo, sin haberse hecho gestión alguna en la corte de distrito, y sin embargo, levantada la cuestión de que una sentencia no podía ser embargada en Puerto Rico, la corte dijo, a la página 632:

" 'No trataremos de decidir la cuestión entre las partes que se hallan en esta corte, toda vez que es importante y que no debe ser resuelta por nosotros a menos que haya sido debidamente discutida en la corte inferior.' "

Nos inclinamos a creer que la sentencia era divisible. El caso de *Cosme* v. *Márquez,* 49 D.P.R. 783, citado por la corte de distrito, es autoridad suficiente para sostener la conclusión.

■ Ahora bien, partiendo de esa base ¿pudo en este caso concreto embargarse por el márshal la sentencia en cuanto a sus pronunciamientos favorables a las demandantes y luego adjudicarse a la demandada?

En julio 31, 1936, o sea antes de verificarse la venta de la parte de la sentencia de que se trata y por consiguiente antes también de dictarse por la Corte de Distrito de San Juan la resolución apelada, esta Corte Suprema, en el caso

de *Clausells* v. *Salas,* 50 D.P.R. 553, 561, se había expresado como sigue:

"Por lo que respecta a la segunda cuestión envuelta, bastará decir que a nuestro juicio no cometió la corte al resolverla los errores que le atribuye el apelante.

"Exponiendo los fundamentos de su resolución, dicha corte de distrito se expresa correctamente a nuestro juicio, como sigue:

" 'En cuanto al embargo de cualquier suma de dinero que el demandante debe pagar a los demandados como sobrante de la liquidación de los contratos resueltos por la sentencia dictada en este caso, sostienen los demandados que es nulo, pues equivale al demandante haberse embargado a sí mismo una suma que, por la sentencia corresponde a los demandados, sosteniéndose, además, que el derecho que tienen los demandados reconocido por la sentencia no está sujeto a embargo.

" 'En cuanto a estas cuestiones, el diligenciamiento del márshal, supra, demuestra que lo que se trató de embargar fué:

" ' "Cualquier suma de dinero que el demandante Pedro Clausells Armstrong, debe pagar a los demandados citados, como sobrante de la liquidación de los contratos resueltos por la sentencia dictada por la corte de distrito en el pleito citado."

" 'Del mismo documento aparece que las únicas personas notificadas del embargo fueron los demandados y las personas a quienes se trató de embargar los cánones de arrendamiento. No hubo "levy" por el márshal de ninguna suma de dinero ni se embargó ningún título o interés, sobre el crédito que por sentencia pudieran haber obtenido los demandados en este caso, ni se notificó al demandante en forma alguna del embargo de dicho crédito.

" 'Nuestro Tribunal Supremo, en el caso de *Villar & Co.* v. *Hansson,* 40 D.P.R. 322, cita con aprobación lo resuelto en el caso de *Bissener* v. *Billon,* 71 Cal. App. 779, al efecto de que "el embargo de propiedad en posesión del demandante no puede practicarse."

" 'De acuerdo con el artículo 10 de la Ley para asegurar la efectividad de sentencias de 1902, establece que el embargo de bienes muebles o la prohibición de enajenarlos, se practicarán depositando los bienes en poder del tribunal o de la persona designada bajo la responsabilidad del demandante. Es cierto que, de acuerdo con el artículo 246 del Código de Enjuiciamiento Civil pueden embargarse, en procedimiento de ejecución, las deudas o créditos de un demandado, pero dispone dicho precepto que será "de igual modo que en

los autos de embargo.'' Aplicando una disposición similar del Código de California, véase el caso de *McBride* v. *Fallon,* 65 Cal. 301. Y en *Needham* v. *Cooney,* (Tex.) 173 S. W. 979, se resolvió que:

'' ' ''A judgment in favor of attachment debtor is not subject to levy.'' ' ''

Y en el caso de *Pontón* v. *Sucrs. de Huertas González,* 44 D.P.R. 629, 631, ·había dicho:

''Flores Álvarez & Co. no· ataca seriamente la jurisprudencia de California al efecto de que una sentencia no puede ser vendida en pública subasta, sino que el método a seguir es notificar en forma legal (*garnish*) a los deudores· obligados por sentencia. La idea es que la sentencia constituye solamente evidencia de una deuda y no está sujeta a un embargo personal.''

Si lo resuelto en dichos casos prevalece, la pregunta formulada debe contestarse en la negativa.

Como dudáramos del alcance de nuestras anteriores decisiones al sernos sometida la cuestión de nuevo, la estudiamos con mayor detenimiento y hemos encontrado con respecto a ella muchas opiniones en conflicto. En el volumen 31 de la obra American Law Reports, a la página 711 comienza la anotación al caso de *Verry* v. *Barnes,* 154 Minn. 252, 191 N. W. 589, de la cual transcribimos lo que sigue:

''Si la misma persona puede ser o no demandante y parte en cuyo poder se embargan bienes (*garnishee*), es cuestión sobre la cual las autoridades están en conflicto. Una línea de autoridades sostiene, mientras que la otra niega, el derecho de un demandante a constituirse en *garnishee.* Las jurisdicciones en los respectivos bandos están divididas casi por igual, con un escaso margen en pro de aquéllas que favorecen el derecho. Bajo estas circunstancias difícilmente podría decirse que el peso de las autoridades está en favor de uno u otro criterio. Aunque el caso de *Verry* v. *Barnes,* ante, 707, (*Verry* v. *Barnes,* 154 Minn. 252, 191 N. W. 589, 31 A.L.R. 707) al resolver que el deudor por sentencia no puede embargar su propia sentencia—por lo menos después que se ha incautado de la propiedad y se ha anunciado la subasta de la misma—no discute directamente la cuestión como tal, de si un demandante tiene o no derecho en todo caso a constituirse a sí mismo en parte en cuyo poder se embargan bienes (*garnishee*), sin embargo, la decisión parece estar

en armonía con aquellas autoridades que niegan la existencia de tal derecho, y parece estar opuesta a un número de casos que han aplicado la doctrina de que un demandante puede constituirse a sí mismo en *garnishee,* al resolver que un deudor por sentencia puede embargar la misma. Antes de esta decisión del caso de Barnes, parecía que el peso de las autoridades favorecía el derecho de un demandante a constituirse en *garnishee.* Esa decisión hace que la regla exacta sobre la cuestión sea algo más dudosa, mas las autoridades parecen aun preponderar ligeramente en favor de este derecho.

"La mayoría de los casos envuelve deudas de, o sentencias obtenidas contra, el demandante en el procedimiento de embargo (*garnishment*). Sin embargo, varios casos presentan la cuestión relativa al derecho que tiene el demandante a embargar bienes que están en su propio poder y que pertenecen a su deudor. El derecho del demandante a embargar tales bienes parece más claro que su derecho a embargar una suma adeudada por él al demandado, pero las decisiones en general aparentemente no hacen distinción alguna a este respecto. En *Beach* v. *Fairbanks,* (1884) 52 Conn. 167, la corte dijo que parecía ser cosa resuelta que los efectos en poder de una parte, pertenecientes a su deudor, podían ser embargados mediante un *garnishee process* iniciado por él mismo, pero que no era cosa resuelta que una deuda de una parte puede ser embargada mediante dicho procedimiento en un pleito entablado por el deudor sobre una reclamación que él pueda tener contra su acreedor. Empero, semejantes aseveraciones son *dicta,* puesto que la decisión descansa en otros fundamentos.

"Hasta cierto punto los casos son afectados por los términos específicos de los estatutos locales, aunque muchos de ellos han sido resueltos a base de fundamentos generales, y con frecuencia han seguido precedentes sin precisar las razones que ha habido para la decisión."

Hemos consultado Corpus Juris y Ruling Case Law. Ambas obras anotan los diversos criterios existentes. Por ejemplo en 28 Corpus Juris 50, se dice:

"Bajo la costumbre extranjera de embargo de Londres, de donde se derivó el remedio de embargar bienes en poder de un tercero (*garnishment*), y el demandante podía constituirse a sí mismo en *garnishee,* y esta práctica se ha permitido extensamente bajo los estatutos que autorizan esa clase de embargos. Mas los casos mejor considerados y, aparentemente, el peso de las autoridades, se pro-

nuncian en sentido contrario. El conflicto parece ser irreconcilia-
ble. El contexto de los distintos estatutos varía, por supuesto; pero
las decisiones en pro y en contra se basan de ordinario en conside-
raciones generales. La regla que se opone a que un demandante se
constituya a sí mismo en *garnishee* se basa en la falta de la nece-
sidad de acudir al procedimiento de *garnishment* y en la inaplicabi-
lidad del remedio en tales casos, así como en el carácter contencioso
del procedimiento contra el *garnishee.* En su consecuencia, se ha
resuelto que el demandante no puede constituirse a sí mismo en
*garnishee,* aun cuando las posiciones asumidas por él como deman-
dante y *garnishee,* respectivamente, tengan aspectos distintos. A ve-
ces se hace una distinción a este respecto entre el embargo (*garnish-
ment*) de bienes tangibles en poder del demandante y el embargo
(*garnishment*) de una deuda del demandante al demandado.''

Y en la nota 84 de la propia página 50 del volumen 28 de
Corpus Juris, se cita un caso cuyos razonamientos conside-
rados en relación con los hechos del que está sometido a
nuestra consideración y decisión, tienden en verdad a jus-
tificar una respuesta también en la negativa a la pregunta
formulada. Dice la nota:

''En el caso de *Rice* v. *Sharpleigh Hardware Co.,* 85 Fed. 559,
564, interpretando el estatuto de Tennessee, se dijo:

'' 'En principio, se le ocurrirá fácilmente a cualquiera que el per-
mitir a un demandante que embargue una deuda suya a favor de
su acreedor, acreedor que él convirtió en parte demandada para
tal fin, es una desviación del procedimiento de *garnishment* en su
forma ordinaria y deja entrever que existe el propósito de lograr
algún fin ulterior o siniestro. Si dos personas son deudoras entre
sí, las dos deudas se compensan; y desde tiempo inmemorial las
cortes de derecho les han concedido amplia oportunidad para que se
las compensen entre sí en todo momento en que cualquiera de ellas
instruya una acción en derecho. Y cualesquiera deficiencias que an-
tiguamente existieran las cortes de derecho han sido suplantadas
desde largo tiempo ha por remedios en equidad, de suerte que nunca
es necesario que el uno embargue los bienes del otro recurriendo al
procedimiento de *garnishment* con el solo fin de compensar una deuda
con la otra.' ''

Sin embargo en 13 Am. Dec. 384 aparece reportado un
caso de Louisiana, el de *Grayson* v. *Veeche,* 12 Martin 688,

que decide la cuestión en sentido adverso a lo ya resuelto por nosotros, tratándola en forma tan sencilla, clara y convincente que nos parece que expone la ley tal cual es y debe seguirse en esta jurisdicción. Transcrita íntegra la breve opinión de la corte, dice:

"Éste es un pleito en el cual el demandante embargó el importe de una sentencia obtenida recientemente contra él por el aquí demandado. Éste logró anular el embargo, siendo la corte de distrito de opinión 'que una persona que está en deuda con otra no puede embargar, por una supuesta suma que a ella se le adeuda, la cantidad por ella debida y que está en sus propias manos, convirtiéndose así en la persona en cuyo poder se embarga la deuda (*garnishee*).' El demandante apeló. De acuerdo con nuestra ley, los efectos o créditos (*effects ou creances*) pertenecientes a deudores ausentes pueden ser embargados: I Mart. Dig. 520, n. 6. Por tanto, si una suma adeudada por tal deudor no puede ser embargada por la persona que la adeuda, ello debe ser así por caer bajo alguna excepción a la regla general. El juez de distrito no ha citado excepción alguna, ni el letrado del apelado se refiere a ninguna.

"En el caso de *Graighle* v. *Notnagel et al.*, 1 Pet. 245, el juez Washington, que emitió la opinión del tribunal, dijo que un demandado puede embargar el dinero adeudado por él al demandante, y que se encuentra en su propio poder, y alegar en una acción entablada en su contra que dicho embargo se halla pendiente. Sergeant en su Ley sobre Embargos, 72, demuestra que en Inglaterra una parte puede embargar dinero que ella misma debe. De suerte, pues, que si A recobra una deuda contra B, éste puede embargar en sus propias manos cualquier suma que A le adeude: 1 Rolle's Abr. 554. Nuestra ley autoriza universalmente el embargo de los créditos de un deudor, y el caso de Peters citado más arriba demuestra que esto puede hacerse en Pennsylvania aun después de haberse entablado un litigio para recobrar el dinero que fué más tarde embargado; y la cita de Rolle demuestra que las cortes inglesas sostienen que aun una sentencia favorable no impide que se trabe el embargo. El juez Washington examina la cuestión a base de principios generales. No descansa en ninguna disposición específica de Pennsylvania sino que demuestra que no existe la menor incorrección o incongruencia al embargar una persona una suma que ella misma debe. Su razonamiento nos parece concluyente.

"No vemos que pueda hacerse distinción alguna bajo los términos generales de nuestro estatuto. Éste autoriza el embargo de los créditos del deudor, sin hacer distinción alguna entre aquéllos que se encuentran en poder de una persona que tiene una reclamación contra aquél, procediendo un embargo contra éstos. *Ubi lex non distinguit nec non distinguere debemus.* Creemos que el juez de distrito estuvo equivocado.

"Por tanto, se ordena y decreta que la sentencia de la corte de distrito sea anulada, dejada sin efecto y revocada, y devuelto el caso con instrucciones a la corte inferior para que actúe tal cual si el embargo no se hubiera anulado; imponiéndose las costas a la parte demandada y apelada."

Y nos inclinamos aún más a estar conformes con la Corte Suprema de Louisiana en atención a las disposiciones de nuestro Código Civil y de nuestro Código de Enjuiciamiento Civil a que se refirió en la propia resolución apelada la corte sentenciadora y a que un estudio de las decisiones citadas por la corte de distrito en el párrafo de su opinión que transcribimos con aprobación en el caso de Clausell, supra, demuestra que no tienen en verdad el alcance que se les diera.

Siendo ello así, la pregunta formulada será contestada y se contesta en la afirmativa, debiendo en su consecuencia declararse el recurso sin lugar y *confirmarse la resolución apelada.*