[No. C054324. Third Dist. June 30, 2008.]

STEPHEN M. WALTRIP et al., Plaintiffs and Appellants, v.
KEVIN B. KIMBERLIN et al., Defendants;
WELLS FARGO BANK, Claimant and Respondent.

**COUNSEL**

Noreen E. McDermott; Sedgwick, Detert, Moran & Arnold, Stephen W. Jones, Rogert W. Sleight and Christopher A. Nedeau for Plaintiffs and Appellants.

Mains and Bloom, Steven B. Mains and Yvonne Bloom for Claimant and Respondent.

OPINION

**MORRISON, J.**—This case requires us to determine the priority of competing liens, of a judgment creditor and the debtor's attorney, on settlement proceeds. Plaintiffs appeal from an order authorizing payment of counsel fees and costs from a settlement. Out of the $2.5 million settlement, the order authorized payment of $1,726,632 to counsel for fees and costs and $773,368 to Wells Fargo Bank, a creditor. Plaintiffs, who had sought disbursement of the entire settlement to counsel, contend the trial court erred because the attorney lien had priority over Wells Fargo's creditor lien.

■ We agree and reverse. Although Wells Fargo had a security interest in plaintiffs' collateral, through a collateral security agreement and later a judgment lien on personal property, those liens did not cover commercial tort claims and the settlement proceeds were from commercial tort claims. The attorney lien was created by the retainer agreement between plaintiffs and counsel and was created before Wells Fargo filed a notice of lien in the pending action. The notice of lien did not relate back to the prior liens because those liens covered different property. We remand for further proceedings.

## FACTS

In 1996, Wells Fargo Bank (the Bank) made two loans, totaling $600,000, to Waltrip and Associates, Inc. (Waltrip). One of the loans, for $500,000, was secured by a commercial security agreement.[1] Under this agreement, Waltrip granted the Bank a security interest in all inventory, equipment and general intangibles. The Bank perfected the security interest by filing a Uniform Commercial Code Financing Statement UCC-1 form (UCC-1 financing statement).

Waltrip failed to repay the first loan from the Bank. The Bank filed suit and in August 2001 obtained a money judgment against Waltrip in the principal amount of $685,909.08.

In August 2001, Waltrip and Stephen M. Waltrip, Thinh T. Waltrip and the Waltrip and Associates Money Purchase Pension Plan (collectively plaintiffs) brought suit against Kevin B. Kimberlin, Spencer Trask Securities, Inc., and other defendants for breach of contract, breach of fiduciary duty and fraud

---

[1] Wells Fargo contends the commercial security agreement applies to both loans. The agreement in the record only applies to a $500,000 loan.

and deceit (the Kimberlin case).[2] The action was based on agreements under which defendants were to provide financing for the development of Waltrip in exchange for stock and the ultimate transfer of Waltrip's property and inventory, trade secrets, intellectual properties and employees. Plaintiffs alleged defendants failed to perform the obligations under the agreements and made certain false representations to induce plaintiffs to fulfill their obligations under the agreements.

The final, fifth amended complaint summarized the case by asserting defendants "entered into a scheme to defraud" plaintiffs. Plaintiffs alleged defendants destroyed Waltrip, a 20-year-old company, and financially ruined Stephen and Thinh Waltrip "through fraud, misrepresentation, breaches of fiduciary and other chicanery."

Plaintiffs were originally represented in the Kimberlin case by Johnny L. Griffin, III. Pursuant to a fee agreement dated November 2000, plaintiffs agreed to a flat fee of $20,000 plus a contingency fee on the net proceeds, after payment of costs and plaintiffs' liabilities. The percentage of the contingency fee varied depending on the stage at which the case resolved; it would be one-third of the net proceeds if the case settled before trial.

A few days after the lawsuit was filed, the Bank filed a judgment lien for $685,909.08 against the personal property of Waltrip pursuant to Code of Civil Procedure sections 697.510 and 697.530. Stephen Waltrip was named as an additional judgment debtor. Shortly thereafter, Waltrip failed to repay the second loan from the Bank. The Bank obtained a money judgment for $108,727.64 and filed a judgment lien for this amount in September 2002 against personal property of Waltrip and Stephen Waltrip.

In May 2002, Noreen E. McDermott substituted for Griffin as plaintiffs' attorney. That December, plaintiffs entered into a contingency legal fee agreement with the McDermott Law Offices for legal services in the Kimberlin case. The agreement provided that plaintiffs would pay "all out-of-pocket expenses necessary in the discretion of Attorneys to prosecute any claim made with respect to the Matter. Clients will be billed for any costs incurred for the prosecution of any claim made with respect to the Matter. If Clients

---

[2] The Bank requests this court to take judicial notice of a certificate of status showing that Waltrip's corporate powers were suspended as of December 14, 2006. We grant that request. (Evid. Code, §§ 452, subd. (c), 459.) During the period that a corporation is suspended for failure to pay taxes, it may not prosecute or defend an action or appeal from an adverse judgment. (*Grell v. Laci Le Beau Corp.* (1999) 73 Cal.App.4th 1300, 1306 [87 Cal.Rptr.2d 358].) There appears to be no impediment to the other plaintiffs pursuing this appeal.

are unable to pay out of pocket expenses, Attorneys may, in their sole discretion, advance funds to Clients to facilitate proper prosecution of Clients' claims." The agreement further provided: "Attorneys shall receive as legal fees in the Matter forty percent (40%) of any amounts received by trial, settlement or any other means. Clients shall assign to Attorneys as a lien any and all the above-described legal fees." The agreement provided for payment as follows: "After recovery of any amounts received by trial, settlement or any other means, and after determination of legal fees as described above, but before payment of any recovery to Client, Attorneys shall be repaid out of any recovery all costs, expenses and the fees advanced by Attorneys in the Matter. Attorneys are hereby granted a lien by Clients in protection of Attorneys' costs, expenses and fees against any sums recovered in this case, which means that Attorneys are authorized to repay Attorneys these amounts out of any sums that Attorneys recover for Client."

In April 2003, the Bank filed a notice of lien in the pending Kimberlin case pursuant to Code of Civil Procedure section 708.410 et seq. for the two money judgments it had received against Waltrip.

In February 2004, Sedgwick, Detert, Moran & Arnold LLP (Sedgwick) associated with McDermott as trial counsel in the Kimberlin case. Plaintiffs' legal fees under the fee agreement with McDermott were not increased. "Rather, Sedgwick, Detert, Moran & Arnold LLP will receive 60% (sixty percent) of the fee and Nora McDermott will receive 40% (forty percent). The reason for the division of fees in this manner is that Sedgwick, Detert, Moran & Arnold LLP has agreed to pay all out-of-pocket expenses for preparation and trial of this case."

In August 2005, plaintiffs settled with some of the defendants in the Kimberlin case. The settlement provided for the payment of $2.5 million and the return to plaintiffs of all Waltrip property, including certain software, in defendants' possession. Because notices of lien had been filed, court approval was required under Code of Civil Procedure section 708.440. In moving for court approval, plaintiffs stated they were not intending to defraud or avoid any lien holders. The court approved this settlement. The order provided: "After payment of attorneys fees and costs incurred by plaintiffs' counsel, the net settlement proceeds shall be deposited in the attorney-client trust account of Sedgwick Detert Moran & Arnold pending negotiation of payment to creditors."

A few months later, in a letter to Waltrip's creditors, Sedgwick proposed paying $2 million of the settlement fund, which was then $2,511,000, in fees

and costs. The fee was 40 percent of the gross settlement and costs were in excess of $1 million.

The Bank objected to this disbursement but later agreed to a distribution of $1,250,000.

The remaining portion of the Kimberlin case proceeded to trial and resulted in a defense verdict. On a stipulated judgment, plaintiffs took nothing on either their complaint or Kimberlin's cross-complaint.

Plaintiffs then moved, pursuant to Code of Civil Procedure section 708.440, for an order authorizing payment of fees and costs to counsel. They sought to disburse the entire remaining amount of the settlement to Sedgwick and McDermott.

The Bank opposed the motion. Asserting it was both a secured creditor and a judgment creditor of Waltrip, the Bank argued it was entitled to recover the full value of its claim from the settlement proceeds.

The trial court raised a jurisdictional question presented in the case of *Brown v. Superior Court* (2004) 116 Cal.App.4th 320 [9 Cal.Rptr.3d 912]. *Brown* held that, because the attorney is not a party to the underlying action, he must file a separate action to enforce his lien. The court acts in excess of its jurisdiction in adjudicating the validity of the attorney lien. (*Id.* at pp. 329–333.) The court, however, does not lack fundamental jurisdiction to adjudicate the contractual lien and, where the parties allow the court to adjudicate the lien without objection, that adjudication is valid. (*Id.* at p. 332.) The Bank waived any jurisdictional objection to the court's deciding the motion.

The court found the Bank's lien had priority over the attorney lien. It also found some equity in favor of the attorneys, without whose efforts there would be no money to fight over. Exercising its equitable powers, the court found the Bank was entitled to some recovery on the strength of its lien and split the settlement $1,726,632 to the attorneys and $773,368 to the Bank.

## DISCUSSION

### *Attorney Liens*

"A lien is a charge imposed in some mode other than by a transfer in trust upon specific property by which it is made security for the performance

of an act." (Civ. Code, § 2872.) Civil Code section 2881 declares a lien may be created by contract and Civil Code section 2883 permits an agreement to create a lien on property to be acquired in the future. ■ In California, a lien in favor of an attorney upon the proceeds of a prospective judgment may either be created by express contract or implied from a retainer agreement that indicates the attorney is to look to the judgment for payment of his fee. (*Cetenko v. United California Bank* (1982) 30 Cal.3d 528, 531 [179 Cal.Rptr. 902, 638 P.2d 1299] (*Cetenko*).)

■ An attorney's contractual lien is created and takes effect when the fee agreement is executed. (*Cetenko, supra*, 30 Cal.3d at p. 534; *Carroll v. Interstate Brands Corp.* (2002) 99 Cal.App.4th 1168, 1175 [121 Cal.Rptr.2d 532].) A contractual lien for attorney fees is a secret lien; no notice is required before it is effective against a judgment creditor who levies on the judgment. (*Cetenko, supra*, at p. 533; *Carroll v. Interstate Brands Corp., supra*, at p. 1172; *Pangborn Plumbing Corp. v. Carruthers & Skiffington* (2002) 97 Cal.App.4th 1039, 1051 [119 Cal.Rptr.2d 416] (*Pangborn*).)

■ Where there are competing liens, the general rule is that, all things being equal, liens have priority according to the time of their creation.[3] (Civ. Code, § 2897.) An attorney's lien on a judgment for services prevails over later encumbrances. (*Cetenko, supra*, 30 Cal.3d at p. 534; *Pangborn, supra*, 97 Cal.App.4th at p. 1051.)

■ Public policy favors the priority of the attorney lien. "If an attorney's claim for a lien on the judgment based on a contract for fees earned prior to and in the action cannot prevail over the lien of a subsequent judgment creditor, persons with meritorious claims might well be deprived of legal representation because of their inability to pay legal fees or to assure that such fees will be paid out of the sum recovered in the latest lawsuit. Such a result would be detrimental not only to prospective litigants, but to their creditors as well." (*Cetenko, supra*, 30 Cal.3d at pp. 535–536.)

■ Equitable considerations also favor the attorney lien.[4] It is a principle of equity that "those whose labor, skills and materials resulted in the creation

---

[3] Civil Code section 2897 provides: "Other things being equal, different liens upon the same property have priority according to the time of their creation, except in cases of bottomry and respondentia."

[4] The Bank cites to *City and County of San Francisco v. Sweet* (1995) 12 Cal.4th 105 [48 Cal.Rptr.2d 42, 906 P.2d 1196] (*Sweet*), in arguing equity does not give an attorney lien "super-priority." We find *Sweet* distinguishable. In *Sweet*, the plaintiff was injured crossing the street and hospitals owned by the city and county provided medical services. Under Government Code section 23004.1, the county had a first lien against a future judgment for medical care. The plaintiff later sued the driver who struck him and obtained a settlement of $175,000. His attorney asked the county to reduce its lien by a proportionate share of the attorney fees. The trial court concluded that was fair under the "common fund" doctrine. The Supreme Court

of a fund should be entitled to priority in the payment of their claims from such source." (*Pangborn, supra,* 97 Cal.App.4th at p. 1054.) This principle is recognized in the preference for wage claims (Code Civ. Proc., § 1204) and mechanic's liens (Civ. Code, § 3109). (*Pangborn, supra,* at p. 1054.) It is the attorney's labor, skill and materials, and his willingness to take the risk of no recovery, that results in the judgment or settlement paid to the debtor. (*Ibid.*) " 'The special or charging lien of an attorney has been held to be an equitable right to have the fees and costs due to him for services in a suit secured to him out of the judgment or recovery in the particular action, the attorney to the extent of such services being regarded as an equitable assignee of the judgment. It is based, as in the case of a lien proper, on the natural equity that a party should not be allowed to appropriate the whole of a judgment in his favor without paying for the services of his attorney in obtaining such judgment.' " (*Haupt v. Charlie's Kosher Market* (1941) 17 Cal.2d 843, 845 [112 P.2d 627].)

■ An attorney lien does not always have priority over other liens; it does not have priority over prior liens on the same property. "Of course, if an attorney does not enter into an agreement for a contractual lien upon any litigation proceeds until *after* the action has been filed, and *after* a judgment creditor has given notice pursuant to [Code of Civil Procedure] sections 708.410 and 708.420, the judgment creditor's lien will have priority. [Citation.] Moreover, an attorney's contractual lien for fees cannot displace a creditor's *recorded* security interest in real property that is the subject of litigation. [Citation.]" (*Pangborn, supra,* 97 Cal.App.4th at pp. 1051–1052, fn. omitted, original italics.)

For example, in *Atascadero Factory Outlets, Inc. v. Augustini & Wheeler* (2000) 83 Cal.App.4th 717 [99 Cal.Rptr.2d 911], the lien for attorney fees was held subordinate to the claims of two secured creditors. A seller retained a law firm to collect proceeds on a note that secured a debt. After an award in arbitration, a dispute arose between the law firm and the creditors over priorities of their liens. The court found the creditors had priority because they had perfected their security interest in the note two years before the attorney lien arose and the attorneys knew or should have known they were third in line. (*Id.* at p. 721.) The court further found no equitable considerations, such as unjust enrichment, required a different result. The law firm did not provide services essential to create or preserve the collateral as the note was secured by a deed of trust on real property. (*Id.* at p. 722.)

disagreed, finding the doctrine was not applicable where the relationship of the plaintiff and lien claimant was that of debtor and creditor. (*Sweet, supra,* at p. 116.) The court did not, however, decide the priority between the attorney lien and the medical lien. Such a determination was unnecessary as the recovery exceeded the amount necessary to pay all attorney fees, litigation expenses, and the medical lien. (*Id.* at p. 109, fn. 3.) Moreover, it appears the medical lien arose before the attorney lien.

Equitable considerations and public policy may also determine the priority of an attorney lien. In *Del Conte Masonry Co. v. Lewis* (1971) 16 Cal.App.3d 678 [94 Cal.Rptr. 439], the trial court's determination that the judgment creditor's lien had priority over an attorney's contractual lien was upheld on the basis that the equities of the claimants were not equal. The attorney lien was not created until after the judgment creditor gave notice it intended to file a lien on the anticipated judgment. "Priority based on time of creation may therefore be subordinated to the equitable preference accorded to the party who is first to assert his claim. [Citation.]" (*Id.* at p. 681.) On grounds of public policy, an attorney lien may not attach to monies received for child support. (*Hoover-Reynolds v. Superior Court* (1996) 50 Cal.App.4th 1273, 1280 [58 Cal.Rptr.2d 173].)

Plaintiffs contend the attorney lien is first in time as compared to the Bank's lien on the proceeds of the Kimberlin action and none of the exceptions apply. Therefore, the judgment must be reversed because it was based on the court's finding that the Bank's lien had priority.

The Bank contends it has three overlapping liens on the Kimberlin case proceeds, so its lien is prior in time to the attorney lien. We consider each of the Bank's liens in turn.

### Commercial Security Agreement

In 1996, the Bank obtained a security interest in Waltrip's inventory, equipment and general intangibles under a security collateral agreement. The Bank perfected its security interest by filing a UCC-1 financing statement. The Bank argues this security interest was first in time and thus takes priority over the attorney lien. The Bank claims this priority prevails whether or not the security interest was perfected at all times.[5]

Plaintiffs reply the 1996 security interest did not cover the proceeds of the Kimberlin case because the settlement of the Kimberlin case was the settlement of commercial tort claims. They are correct.

The commercial security agreement did not define "general intangibles," but stated the definitions of the Uniform Commercial Code applied. Former

---

[5] A UCC-1 financing statement lapses after five years unless a continuation statement is filed. (Cal. U. Com. Code, § 9515, subd. (c).) In the cause below the Bank could not locate the continuation statements and the case proceeded on the assumption the perfection had lapsed. The Bank has since located the continuation statements and requests this court to take judicial notice of them. Because we find the security interest did not cover the tort claims of the Kimberlin case, we deny the request for judicial notice. The continuation statements are not relevant.

section 9106 of the California Uniform Commercial Code, in effect in 1996, defined "general intangibles" as "any personal property (including things in action) other than goods, accounts, chattel paper, documents, instruments, and money." (Stats. 1974, ch. 997, § 11, p. 2121.) While this definition would appear to cover the claims in the Kimberlin case, the law at that time was clear that a security interest could not be granted in a tort claim. (Cal. U. Com. Code, former § 9104, subd. (k), Stats. 1980, ch. 1156, § 4, pp. 3860, 3861.) Further, under the law in effect in 1996, a security interest could not attach to the proceeds of a tort claim. (*In re Pacific/West Communications Group, Inc.* (9th Cir. 2002) 301 F.3d 1150, 1154–1155 (*Pac/West*).)

■ Operative July 1, 2001, the definition of "general intangibles" changed. (Stats. 1999, ch. 991, § 35.) California Uniform Commercial Code section 9102, subdivision (a)(42) defines "general intangibles" to exclude commercial tort claims. A commercial tort claim is a claim arising in tort where the claimant is an organization or the claimant is an individual and the claim arose in the course of the claimant's business and does not include damage arising out of personal injury or death. (Cal. U. Com. Code, § 9102, subd. (a)(13).)

Plaintiffs contend settlement of the Kimberlin case was the settlement of commercial tort claims. The settling defendants were certain individual defendants and the onQuo Corporation. All of the claims against the individual defendants were tort claims. Only one claim against the onQuo Corporation was for breach of contract. The final complaint characterizes the case as sounding primarily in tort, alleging defendants "defrauded" plaintiffs. The Kimberlin case involved primarily tort claims arising out of Waltrip's business.

■ After 2001, a security interest may be granted in a pending commercial tort claim. (Cal. U. Com. Code, § 9109, subd. (d)(12).) The collateral security agreement did not include the claims in the Kimberlin case as collateral because they were not adequately described. A description of collateral by category or type is usually sufficient. (Cal. U. Com. Code, § 9108, subd. (b)(2), (3).) That rule, however, does not apply to a commercial tort claim. (*Id.*, subd. (e)(1).) Obviously, the Kimberlin case could not have been specifically described in 1996 because it did not yet exist. The agreement was never amended to include the Kimberlin case claims as collateral.

■ Generally, a security agreement may create a security interest in after-acquired collateral. (Cal. U. Com. Code, § 9204, subd. (a).) The 1996 agreement included an after-acquired clause. A security interest, however, does not attach to a commercial tort claim under an after-acquired property clause. (Cal. U. Com. Code, § 9204, subd. (b)(2).) As the official code

comment on section 9204 states: "In order for a security interest in a tort claim to attach, the claim must be in existence when the security agreement is authenticated." (Official Comments on U. Com. Code, West's Ann. Cal. U. Com. Code (2002 ed.) foll. § 9204, p. 188.)

■ For the first time at oral argument, the Bank contended the analysis of *Pac/West, supra*, 301 F.3d 1150, was dispositive of this case. We need not consider an argument raised for the first time at oral argument. (*Sunset Drive Corp. v. City of Redlands* (1999) 73 Cal.App.4th 215, 226 [86 Cal.Rptr.2d 209].) Moreover, we find *Pac/West* is not dispositive as it did not address the central issue in the case: the priorities of competing liens.

In *Pac/West*, the bankrupt company received an arbitration award of almost $2 million in settlement of a defamation action; the amount represented the value of Pac/West as a going concern. A creditor with a security interest in all of Pac/West's personal property sought to attach its security interest to the arbitration award. The bankruptcy court held the creditor could, but imposed a surcharge to pay Pac/West's arbitration attorneys for their work. (*Pac/West, supra*, 301 F.3d at pp. 1151–1152.) The Ninth Circuit held the creditor could not attach its security interest to tort proceeds under pre-2001 California law, noting the law had since changed. (*Id.* at p. 1154.) Even if we accept *Pac/West*'s dictum that California law now permits attachment of proceeds from tort claims, the court did not address priority of an attorney lien on those proceeds. We note only that both the bankruptcy court and the district court permitted Pac/West's arbitration attorneys to be paid by a surcharge on the arbitration proceeds.

The 1996 commercial security agreement did not create a security interest in the commercial tort claims of the Kimberlin case. It could not have done so in 1996 and there was no amendment to the agreement specifically describing the commercial tort claims of the Kimberlin case as collateral. The attorney lien did attach to commercial tort claims. Therefore, the Bank cannot claim a senior lien on the Kimberlin case proceeds based on the 1996 agreement.[6]

*Judgment Lien on Personal Property*

■ Code of Civil Procedure section 697.510 permits a creditor with a money judgment to create a judgment lien on the debtor's personal property by filing a notice of judgment lien in the office of the Secretary of State. The

---

[6] General intangibles include software. (Cal. U. Com. Code, § 9102, subd. (a)(42).) Thus, the Bank has a security interest in the software transferred to plaintiffs in settlement of the Kimberlin case. At oral argument, counsel for Waltrip indicated the Bank was free to take the software.

Bank filed such notices in August 2001 and September 2002 with respect to its two money judgments against Waltrip. The Bank contends that, since these liens were filed before the contractual lien between Waltrip and McDermott was created in December 2002, these liens have priority under either Code of Civil Procedure section 697.590, subdivision (b), which provides that conflicting interests rank according to priority in filing or perfection, or the first-in-time rule of Civil Code section 2897.

The Bank further contends "[n]or can there be any question that the collateral covered by the Bank's JLPP and its proceeds charged the settlement fund." The Bank argues the gravamen of the Kimberlin case was "Waltrip's assertion of a contractual relationship with Kimberlin whose breaches . . . caused Waltrip damages." These damages included lost value to business assets, such as accounts, equipment, inventory, chattel paper and negotiable documents of title. These business assets were the collateral on which the Bank had a lien under both the security agreement and the judgment lien on personal property.

 As discussed above, the category of collateral applicable to the settlement proceeds is a commercial tort claim. The Bank ignores that Kimberlin did not settle and the claims against the settling defendants were based on tort, not contract, with one exception. Commercial tort claims are not covered by the judgment lien on personal property. Code of Civil Procedure section 697.530, subdivision (a) sets forth the categories of personal property on which the lien attaches: accounts receivable, chattel paper, equipment, farm products, inventory and negotiable documents of title. Commercial tort claims are not listed.[7] Further, to the extent the judgment lien attached to the proceeds of the settlement, it attached at the time the settlement proceeds were acquired in 2005. (Code Civ. Proc., § 697.530, subd. (b).) This was after the attorney lien.

Because the judgment lien on personal property did not extend to the commercial tort claims of the Kimberlin case, the Bank does not have a claim on the settlement proceeds under this lien that is senior to the attorney lien.

*Judgment Lien on Pending Action*

 Code of Civil Procedure section 708.410 permits a judgment creditor to obtain a lien on any cause of action asserted by a judgment debtor in a

---

[7] Code of Civil Procedure section 697.530, subdivision (a) provides the judgment lien on personal property is a lien on all interests in the specified personal property if a security interest could be perfected under the California Uniform Commercial Code by filing a financing statement. As discussed above, the California Uniform Commercial Code requires a specific description of a commercial tort claim. (Cal. U. Com. Code, § 9108, subd. (e)(1).)

pending action or special proceeding and on the rights of the judgment debtor to any money or property under a subsequent judgment. The lien is obtained by filing a notice of the lien and an abstract or certified copy of the judgment creditor's money judgment in the pending action. (Code Civ. Proc., § 708.410, subd. (b).) Unless the judgment lien is first satisfied, no settlement of the pending action may be entered into on behalf of the judgment debtor without the written consent of the judgment creditor or authorization by court order. (Code Civ. Proc., § 708.440, subd. (a).)

The Bank filed a judgment lien on pending action in the Kimberlin case in April 2003. This filing was several months after creation of the attorney lien in favor of McDermott. Under *Cetenko*, the attorney lien has preference under Civil Code section 2897 because it was created first. (*Cetenko, supra,* 30 Cal.3d at p. 534.)

The Bank contends its judgment lien on pending action has priority because it relates back to the earlier filing of the judgment lien on personal property. The Bank relies on the relation-back rule of Code of Civil Procedure section 697.020, subdivision (b), which provides: "If a lien is created on property pursuant to this division and a later lien of the same or a different type is created pursuant to this division on the same property under the same judgment while the earlier lien is in effect, the priority of the later lien relates back to the date the earlier lien was created."

The Bank's argument is premised on the assertion that the earlier judgment lien on personal property covered the tort claims of the Kimberlin case. As noted, this earlier lien attached only to personal property that was accounts receivable, chattel paper, equipment, farm products, inventory and negotiable documents of title. (Code Civ. Proc., § 697.530, subd. (a).) This prior lien did not attach to commercial tort claims; therefore, the later notice of lien under Code of Civil Procedure section 708.410 did not apply to the same property as the earlier judgment lien and the relation-back rule does not apply.

Accordingly, the Bank's judgment lien on pending action has no priority over the attorney lien.

The trial court's order was based on its finding that the Bank's lien had priority over the attorney lien. That finding was error. As noted above, the first-in-time-of-creation rule of Civil Code section 2897 applies only "[o]ther things being equal." In opposing the payment of attorney fees and costs, the Bank raised equitable considerations, including the reasonableness of the amount of the attorney lien. We remand the matter for determination of those issues.

## DISPOSITION

The judgment is reversed and the matter remanded for further proceedings consistent with the views expressed in this opinion. Plaintiffs shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)

Raye, Acting P. J., and Cantil-Sakauye, J., concurred.

Respondent's petition for review by the Supreme Court was denied September 24, 2008, S165803. Baxter, J., and Corrigan, J., did not participate therein.