Filed 10/3/13  Agora Concepts v. Raynak CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| AGORA CONCEPTS, INC., | B243907 |
| Plaintiff, Cross-defendant and Respondent, | (Los Angeles County Super. Ct. No. BC454498) |
| v. | |
| RANDY RAYNAK, | |
| Cross-defendant and Respondent; | |
| ONE COLORADO INVESTMENTS, LLC, | |
| Objector and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Maureen Duffy-Lewis, Judge.  Affirmed.

Kendrick, Jackson & Kearl and Glen R. Segal for Objector and Appellant.

Law Offices of Cruz & Del Valle and Leonard G. Cruz for Agora Concepts, Inc. and Randy Raynak, Plaintiffs, Cross-defendants and Respondents.

\* \* \* \* \* \*

Objector and appellant One Colorado Investments LLC appeals from the order approving a settlement that effectively gave priority to a lien in favor of counsel for plaintiff, cross-defendant and respondent Agora Concepts, Inc. (Agora) and cross-defendant and respondent Randy Raynak (Raynak). We affirm. The trial court properly exercised its discretion to conclude the evidence showed that the attorney's lien was neither collusive nor in violation of the Rules of Professional Conduct, and therefore took priority over appellant's judgment lien.

**FACTUAL AND PROCEDURAL BACKGROUND**

In December 2007, Agora entered into a lease agreement with the Century City Mall, LLC (Mall) to lease a location at the Mall for the purpose of operating a specialty coffee and chocolate shop doing business as Leonidas (Lease). Pursuant to a separate agreement, Randy Raynak and two coinvestors financed the shop. Raynak signed the Lease on Agora's behalf as its "partner" and, separately, signed a personal guaranty (Guaranty) of all of Agora's payments, covenants and other obligations as a tenant under the Lease.

Agora fell behind in its rent; in November 2008 the Mall served Agora with a five-day notice to pay rent or surrender the premises, and in December 2008 it filed an unlawful detainer action against Agora and Raynak, seeking possession of the leased premises. The Mall obtained a default judgment in January 2009 which it utilized to evict Agora in March 2009. Agora and Raynak retained the law firm of Cruz & Del Valle to represent them. Raynak signed a retainer agreement on his own and Agora's behalf (2009 Retainer Agreement) that included a clause providing for an attorney's lien upon "any cause of action or lawsuit filed thereon, and on any recovery whether by settlement, arbitration, judgment or otherwise in this Matter." The "Matter" was identified as the unlawful detainer action. Agora moved to set aside the entry of default and default judgment. The trial court granted the motion in July 2009, and after Agora's answer was deemed filed, the Mall dismissed the unlawful detainer action.

Following the dismissal, Raynak's coinvestors in Leonidas sued Agora, Raynak and Agora president Mary Nguyen for damages related to their investment in the shop

2

(Investors lawsuit). Raynak signed another written retainer agreement with Cruz & Del Valle, on his own and Agora's behalf (2010 Retainer Agreement), which again provided for an identical grant of lien in favor of the attorneys for any recovery in the "Matter," now described as the Investors lawsuit. The 2010 Retainer Agreement further provided that Cruz & Del Valle were to "provide legal services reasonably required to represent Clients in the Matter" and added that such services included "answering the Complaint that was the complaint of the investor and either cross-complaining or bringing a separate action against Century City Mall, LLC." In January 2011, the parties agreed to dismiss the Investors lawsuit pending the filing of a wrongful eviction action. Consequently, in February 2011, Agora filed a complaint for wrongful eviction and abuse of process against the Mall (Century lawsuit). In turn, the Mall cross-complained against Agora and Raynak, alleging causes of action for breach of contract and breach of guaranty.

In October 2011, while the Century lawsuit was pending, appellant obtained a $20,000 stipulated judgment against Agora in a separate action filed in Pasadena. On March 28, 2012, appellant filed a notice of lien (Notice of Lien) in the Century lawsuit. It served a copy of the Notice of Lien, as well as a notice of filing notice of lien, on Cruz & Del Valle and counsel for the Mall. This was the first time that Cruz & Del Valle became aware of appellant's judgment.

On the day set for trial in the Century lawsuit—May 15, 2012—the parties settled. The settlement involved their mutual releases and dismissals in exchange for the Mall's payment of $35,000 to Raynak and Cruz & Del Valle. The terms of the settlement that were placed on the record did not include any mention of the Notice of Lien.

In July 2012, Agora and Raynak moved for approval of the settlement pursuant to Code of Civil Procedure section 708.440[1] and for a determination of lien priorities. They argued that the 2009 Retainer Agreement and the 2010 Retainer Agreement created attorney liens that took priority over the Notice of Lien. In support of the motion, they

---

[1] Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

3

submitted declarations from Raynak and attorney Leonard Cruz, invoices, and the 2009 Retainer Agreement and the 2010 Retainer Agreement under seal. The evidence showed that as of June 2012 Agora and Raynak owed Cruz & Del Valle over $38,000.

Appellant opposed the motion, arguing that the settlement had been structured to divert settlement proceeds away from Agora in order to avoid the Notice of Lien. It further argued that the evidence submitted in support of the motion was insufficient to demonstrate the existence of a valid attorney's lien. Appellant submitted a declaration from its own counsel, documents related to the Notice of Lien, a reporter's transcript of settlement in the Century lawsuit and correspondence concerning the Notice of Lien.

At the hearing on the motion, the trial court admitted into evidence the 2009 Retainer Agreement and the 2010 Retainer Agreement.[2] Following counsel's arguments, the trial court took the matter under submission to review the retainer agreements and thereafter entered a minute order granting the motion.

This appeal followed.

## DISCUSSION

Appellant contends the motion to approve the settlement should have been denied, asserting that the settlement was structured so as to give priority to an unenforceable attorney's lien. We find no merit to this contention.

## I.      Applicable Legal Principles.

Sections 708.410 through 708.480 govern a judgment creditor's lien against a judgment debtor who is a party to a pending action or proceeding. According to those provisions, "a judgment creditor may place a lien on the rights of the judgment debtor to receive money, property or both by way of a settlement or judgment entered in that action. (§ 708.410, subd. (a).)" (*Oldham v. California Capital Fund, Inc.* (2003) 109 Cal.App.4th 421, 429 (*Oldham*).) To obtain a judgment lien in a pending action, "the judgment creditor shall file a notice of lien and an abstract or certified copy of the

---

[2]      We granted appellant's motion to augment the record to include those two documents.

4

judgment creditor's money judgment in the pending action or special proceeding."
(§ 708.410, subd. (b).) Section 708.440 provides that a pending action by the judgment debtor cannot be dismissed or settled without written consent of the judgment creditor or court order. Subdivision (b) of that statute allows a judgment debtor to apply for approval of a settlement or dismissal, and authorizes the court to "include such terms and conditions as the court deems necessary." (§ 708.440, subd. (b).)

Acknowledging that one role of the trial court under the statutory scheme is to prevent collusive evasion of a judgment creditor's lien, the *Oldham* court stated "that facts regarding whether a settlement was structured to evade the lien of the judgment creditor are material to the approval of a settlement under section 708.440. . . . To make an informed and intelligent decision about the settlement, the superior court should have sufficient information to understand who benefits from the transfers contemplated by the proposed settlement and how they are benefited. In other words, the superior court must understand the size of the settlement pie, how the pie is sliced, and who is getting which slice. [Citation.]" (*Oldham, supra*, 109 Cal.App.4th at p. 432.)

Different from a judgment creditor lien, "[a] lien in favor of an attorney upon the proceeds of a prospective judgment in favor of his client for legal services rendered . . . . may be created either by express contract . . . or it may be implied if the retainer agreement between the lawyer and his client indicates that the former is to look to the judgment for payment of his fee [citations]." (*Centenko v. United California Bank* (1982) 30 Cal.3d 528, 531; accord, *Waltrip v. Kimberlin* (2008) 164 Cal.App.4th 517, 525 (*Waltrip*); see also Civ. Code, § 2881 [lien is created by "contract of the parties" or by "operation of law"].) "An attorney's contractual lien is created and takes effect when the fee agreement is executed." (*Waltrip, supra,* at p. 525.) "Unlike a judgment creditor's lien, which is created when the notice of lien is filed (Code Civ. Proc., § 708.410, subd. (b)), an attorney's lien . . . is created and the attorney's security interest is protected even without a notice of lien." (*Carroll v. Interstate Brands Corp.* (2002) 99 Cal.App.4th 1168, 1172; accord, *Waltrip, supra,* at p. 525.)

5

Typically, when there are competing liens on the same assets and the parties' "'[i]nterests are equal in equity,'" liens have priority according to their time of creation. (*Del Conte Masonry Co. v. Lewis* (1971) 16 Cal.App.3d 678, 681; accord, Civ. Code, § 2897; *Waltrip, supra,* 164 Cal.App.4th at p. 525; *Isaac v. City of Los Angeles* (1998) 66 Cal.App.4th 586, 600–601.) "An attorney's lien on a judgment for services prevails over later encumbrances. [Citation.]" (*Waltrip, supra,* at p. 525.)

We review for an abuse of discretion a trial court's approval of a settlement involving conditions related to a judgment lien. (*Casa Eva I Homeowners Assn. v. Ani Construction & Tile, Inc.* (2005) 134 Cal.App.4th 771, 778; *Pangborn Plumbing Corp. v. Carruthers & Skiffington* (2002) 97 Cal.App.4th 1039, 1049.)

## II. The Trial Court Properly Exercised Its Discretion in Approving the Settlement.

At the hearing on the motion to approve the settlement, appellant conceded that if Cruz & Del Valle had a valid attorney's lien, it would take priority over the Notice of Lien. On appeal, appellant contends that the attorney's lien was invalid because it was the product of collusion, the 2010 Retainer Agreement did not cover the fees incurred, and Cruz & Del Valle did not comply with rule 3-300 of the Rules of Professional Conduct. We find no merit to these contentions.

In *Oldham, supra,* 109 Cal.App.4th at page 427, the judgment creditor objected to a settlement agreement involving a matter in which it had a judgment lien on the ground that the terms regarding transfer of real property were uncertain, and there was a possibility that the uncertainty was created to evade the judgment lien. The appellate court explained that one purpose of the judgment creditor lien statutes is "to prevent the judgment debtor, with or without the active assistance of other parties to the settlement agreement, from structuring a settlement so it receives benefits while evading the lien of the judgment creditor, absent appropriate equitable considerations." (*Id.* at p. 430.) Analogizing approval of a settlement under section 708.440 to the type of evaluation required for a class action settlement or a good faith settlement under sections 877 and 877.6, the *Oldham* court held that the trial court must consider any facts tending to show

6

that the settlement was structured to avoid a judgment creditor lien. (*Oldham, supra,* at p. 432.) It noted that "[t]he particular facts relevant to evasion of the lien will vary from case to case because of differences in the property interests involved, variations in the relationships among the entities involved, and differences in the way transfers of interests in property are structured." (*Ibid.*) In the absence of facts showing collusion, the trial court has the discretion to approve the settlement over the objections of the judgment creditor. (See Cal. Law Revision Com. com., 17 West's Ann. Code Civ. Proc. (2009 ed.) foll. § 708.440, p. 374; see also The Enforcement of Judgments Law (1982) 16 Cal. Law Revision Com. Rep. (1982) p. 1521 [court may authorize or approve settlement despite opposition of judgment creditor "when the court concludes that it is in the best interests of the parties to settle"].)

Here, while appellant has hypothesized that the reason the settlement was structured with payment going directly to Raynak and Cruz & Del Valle was to avoid the Notice of Lien, the evidence before the trial court suggested otherwise. It received evidence of the 2010 Retainer Agreement that expressly authorized an attorney's lien over the proceeds of any settlement. It also received evidence that Cruz & Del Valle's fees as of June 2012 exceeded the $35,000 settlement payment. It was further undisputed that the Notice of Lien was not filed until March 2012. Further, Cruz averred that the settlement "was not an attempt to avoid the lien of judgment creditor One Colorado Investments, LLC. My firm did not represent Agora in its case with One Colorado and the undersigned had no knowledge of that case until the undersigned was first served with One Colorado's Notice of Lien."

Against this evidence, appellant argued that the fact the settlement payment did not go directly to Agora established collusion. Where the evidence is conflicting, it is the trial court's duty to weigh that evidence and make credibility determinations. (E.g., *Catherine D. v. Dennis B.* (1990) 220 Cal.App.3d 922, 931.) On review, we "'"must accept as true all evidence tending to establish the correctness of the [trial court's findings], taking into account, as well, all inferences which might reasonably have been thought by the trial court to lead to the same conclusion."'" (*Ibid.,* citing *Board of*

7

*Education v. Jack M.* (1977) 19 Cal.3d 691, 697.)  As the trial court considered the evidence in accordance with *Oldham, supra,* 109 Cal.App.4th at page 432, we find no abuse of discretion in its decision to approve the settlement.  The evidence showed that Cruz & Del Valle had an attorney's lien that was prior in time to the Notice of Lien and that the $35,000 settlement payment was less than the amount owing to the firm.  We are therefore guided by *Waltrip, supra,* 164 Cal.App.4th at pages 530 to 531, where the court determined that an attorney's lien had priority over a judgment lien where the fee agreement preceded the filing of the judgment lien by several months.  (Accord, *Centenko v. United California Bank, supra,* 30 Cal.3d at p. 533 [observing that "the filing of a notice of lien by the attorney is not necessary to protect his security interest against a creditor who levies on the judgment"]; *Haupt v. Charlie's Kosher Market* (1941) 17 Cal.2d 843, 846 [attorney's lien created by fee agreement given priority over subsequent attachment].)

The trial court likewise properly exercised its discretion to reject appellant's challenges to the validity of the attorney's lien.  Renewing those challenges, appellant first contends the 2010 Retainer Agreement did not cover any fees incurred in prosecuting the Century lawsuit because the "Matter" to which it applied was described as the Investors lawsuit.  But the 2010 Retainer Agreement provided for additional services beyond those specified in the 2009 Retainer Agreement, stating that the nature of the legal services to be provided included "either cross-complaining or bringing a separate action against Century City Mall, LLC."  At the hearing, Cruz explained how the 2010 Retainer Agreement specifically contemplated and spelled out that the filing of a separate action was intended to be encompassed by that agreement.

Further, appellant challenges the validity of the 2010 Retainer Agreement on the ground that Raynak lacked authority to bind Agora.  Again, however, the evidence was to the contrary.  The 2010 Retainer Agreement was signed jointly by Raynak and Agora president Nguyen.  Raynak declared that pursuant to a separate agreement negotiated with Nguyen, Agora was to act as a reseller for Leonidas chocolates and Raynak and his coinvestors would otherwise be responsible for all liabilities incurred by the shop,

8

including the Lease. To this end, Raynak signed a personal guaranty of the Lease. Both Raynak and Cruz averred that Raynak was individually responsible for payment of attorney fees on behalf of Agora and himself. Moreover, Nguyen was present at the hearing where the trial court tentatively approved the terms of the settlement; in response to the trial court's inquiries, she stated that she understood and agreed to every term and condition of the settlement and had no questions to ask counsel or Raynak. Accordingly, the evidence showed that Raynak had sufficient authority to enter into the 2010 Retainer Agreement and that Cruz & Del Valle had a valid lien arising therefrom.[3]

Appellant also challenges the validity of the Notice of Lien on the ground that Cruz & Del Valle failed to comply with rule 3-300 of the Rules of Professional Conduct (rule 3-300). "The California Supreme Court has held 'an attorney who secures payment of hourly fees by acquiring a charging lien against a client's future judgment or recovery has acquired an interest that is adverse to the client, and so must comply with the requirements of rule 3-300.' (*Fletcher v. Davis* (2004) 33 Cal.4th 61, 71 (*Fletcher*).) Rule 3-300 requires attorneys who acquire interests adverse to their clients to do so on 'fair and reasonable' terms and, in writing, disclose those terms and advise the clients they may seek independent counsel." (*Plummer v. Day/Eisenberg, LLP* (2010) 184 Cal.App.4th 38, 48.) Appellant argues that the 2010 Retainer Agreement could not have created a valid attorney's lien because it did not contain the advisories required by rule 3-300. The trial court found no authority to support appellant's position that the "writing" required by rule 3-300 is limited to a fee agreement, nor have we.

In a declaration, Cruz outlined his compliance with rule 3-300: "I included attorneys fee liens in retainer agreements with Agora and Raynak, explained the effect of the liens to them, conferred both orally and in writing with Agora and Raynak regarding their right to confer with independent counsel regarding the retainer agreements and the liens contained therein; and gave both Raynak and Agora an opportunity to confer with

---

[3] At a minimum, the evidence established that Agora ratified Raynak's conduct. (See Civ. Code, § 2310 ["A ratification can be made . . . by accepting or retaining the benefit of the act, with notice thereof"].)

9

independent legal counsel. I asked Agora and Raynak to confirm their consent by signing the retainer agreements." At the hearing on the motion, Cruz explained that the 2010 Retainer Agreement's cover letter was the "writing" to which he referred. In view of this evidence, the trial court properly concluded that the attorney's lien was not vitiated by noncompliance with rule 3-300.

Finally, beyond the evidence showing that Cruz & Del Valle had a valid attorney's lien that took priority over the Notice of Lien, we note that public policy and equitable considerations supported approval of the settlement. (See *Oldham, supra*, 109 Cal.App.4th at p. 432 ["Once the superior court knows if the judgment debtor or an entity closely connected to the judgment debtor is getting a settlement slice beyond the reach of the judgment creditor's lien, the court can then determine if equitable considerations justify the evasion of the lien, if terms and conditions should be imposed upon the settlement, or if approval of the settlement should be withheld"].) As summarized in *Waltrip, supra,* 164 Cal.App.4th at pages 525 to 526: "Public policy favors the priority of the attorney lien. 'If an attorney's claim for a lien on the judgment based on a contract for fees earned prior to and in the action cannot prevail over the lien of a subsequent judgment creditor, persons with meritorious claims might well be deprived of legal representation because of their inability to pay legal fees or to assure that such fees will be paid out of the sum recovered in the latest lawsuit. Such a result would be detrimental not only to prospective litigants, but to their creditors as well.' [Citation.] [¶] Equitable considerations also favor the attorney lien. It is a principle of equity that 'those whose labor, skills and materials resulted in the creation of a fund should be entitled to priority in the payment of their claims from such source.' [Citation.] . . . It is the attorney's labor, skill and materials, and his willingness to take the risk of no recovery, that results in the judgment or settlement paid to the debtor." (Fn. omitted.)

In sum, we find no basis to disturb the trial court's exercise of discretion in approving the settlement under section 708.440.

## DISPOSITION

The order granting the motion for approval of settlement is affirmed.  Respondents are entitled to their costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J. *
FERNS

We concur:


_____, Acting P. J.
ASHMANN-GERST


_____, J.
CHAVEZ

---

*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11